[Cite as *In re J.S.*, 2022-Ohio-3306.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| IN THE MATTER OF: | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| J.S. (DOB 4/7/20) | : | | Hon. Patricia A. Delaney, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| | : | | |
| | : | | |
| | : | | Case No. 2022CA00059 |
| | : | | |
| | : | | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Stark County Court
of Common Pleas, Juvenile Division,
Case No 2021JCV00271

JUDGMENT:    Affirmed

DATE OF JUDGMENT:    September 20, 2022

APPEARANCES:

For Plaintiff-Appellee    For Defendant-Appellant Mother

BRANDON J. WALTENBAUGH    TY A. GRAHAM
Stark County JFS    4450 Belden Village Street NW,
Suite 703
402 2nd St SE    Canton, Ohio 44718
Canton, Ohio 44702

*Baldwin, J.*

**{¶1}**    Appellant B.S. appeals from the April 15, 2022 Judgment Entry of the Stark County Court of Common Pleas, Juvenile Court Division, terminating her parental rights and granting permanent custody of J.S. to Stark County Department of Job and Family Services.

STATEMENT OF THE FACTS AND CASE

**{¶2}**    Appellant B.S. is the biological mother of J.S. (DOB 4/7/20). On March 25, 2021, Stark County Department of Job and Family Services (SCDJFS) filed a complaint alleging that J.S. was a dependent and/or neglected child. The trial court ordered that the child be placed in shelter care custody the same day. A hearing occurred on March 26, 2021 after which temporary custody of J.S. was granted to the agency.

**{¶3}**    On June, 11, 2021, the trial court held an adjudicatory hearing and found J.S. was dependent. Temporary custody was continued with SCDJFS.

**{¶4}**    On February 8, 2022, SCDJFS filed a Motion for Permanent Custody. A hearing was held on April 13, 2022. Appellant did not appear for the hearing.

**{¶5}**    At the hearing, Kimberly Gabel testified she was employed as the ongoing family service worker assigned to J.S. Gabel testified that she made efforts to have appellant identify a potential alleged father for J.S. and that appellant claimed that J.S. did not have a father and that she had created him herself. Appellant refused to provide Gabel with any information as to his father. Gabel testified that J.S. had been placed in the temporary custody of the agency since the hearing on June 11, 2021 and had remained in the temporary custody of the agency since that time.

{¶6} Gabel testified that the initial concerns in this case were regarding appellant's mental health and substance abuse issues and her ability to safely care for J.S. Appellant's case plan required her to complete a parenting evaluation through Lighthouse Family Center and follow through with any recommendations, and to engage in substance abuse treatment at CommQuest and follow through with any recommendations and to achieve and maintain sobriety. Appellant also was to address any mental health concerns.

{¶7} Appellant completed a parenting evaluation and Gabel testified that the following recommendations were made:

{¶8} A: Those recommendations are for the mother to be stabilized on appropriate psychotropic medications. Um for the mother to engage in the Goodwill Parenting program after she has demonstrated sobriety and is stabilized on appropriate medications. Um mother was of course recommended to engage in mental health services um comprehensive mental health services which include again medications, um case management services and individual counseling. Um mother was also recommended to apply for SSI benefits. Um as well as look for a payee as well if she were to receive those SSI benefits.

{¶9} Transcript at 8. According to Gabel, appellant had completed an assessment at CommQuest and it was recommended that she participate in and complete the Women's Empowerment Group. Appellant did complete the Women's Empowerment Group.

{¶10} Gabel testified at the hearing that she had concerns regarding appellant's alcohol use. Appellant had had an issue with attendance at CommQuest and had a

positive screen in December of 2021 for alcohol. Appellant stated that she had blacked out from drinking on Christmas and craved alcohol. According to Gabel, appellant minimized her alcohol use.

{¶11} Gabel testified that she continued having concerns for appellant's mental health. She testified that appellant switched mental health providers multiple times because she did not agree with their diagnoses. Appellant was having her medications managed through her primary care physician but Gabel testified that the medication was not sufficient to address her needs. Gabel testified that appellant claimed that a chip had been imbedded in her "by the FBI, Hell's Angels or the Feds." Transcript at 11. She testified that appellant continued reporting having auditory hallucinations despite taking the medication. She testified that appellant did not share those symptoms with mental health providers, making improvement difficult. Appellant stopped taking medications in March of 2022 and was no longer seeing a doctor.

{¶12} The following testimony was adduced when Gabel was asked what behaviors she had observed by appellant that caused her to question her ability to care for herself and J.S.

{¶13} A.   Yes, Um so mother makes these very concerning statements um however mother's presentation is um often times she presents and she is talking very rapidly, she is pacing back and forth, she is grabbing her hair and rubbing her hands on her hair.  She is picking at her skin or picking at um her legs um primarily.  Um at other times she is very, very um just appears almost to be sleeping.  Um just very slow, her eyes are almost closing.  Um her how she even talks is very quiet and very, very um soft spoken.  Um and she can present differently um to visits as she does come to the agency

unannounced and I try to meet with her as often as I can.  Um but she will um she will stare off into the distance and then laugh.  Um and then um will at other times stare off and make comments that as if she was in a conversation and the is no one else there that is talking to her because it's either just me and her in the room, me, her and her child in a room and she is staring off and responding.  Um so these behaviors are um very concerning.

{¶14}  Transcript at 14.

{¶15}  Gabel testified that she continued to have concerns for appellant's parenting during visitation with J.S. According to her, appellant does not accept feedback and was not always interacting with J.S. She further testified that appellant did not believe that she needed a case manager and did not apply for SSI benefits. At the time of the hearing, appellant was not involved in case management services and was not receiving SSI. She was not receptive to help and had indicated that she had flushed all of her medications down the toilet. Appellant was homeless and had not provided proof of employment. When asked, Gabel testified that appellant had not substantially complied with her case plan objectives and the initial concerns that were present when the case had been filed had not be addressed or remedied.

{¶16}  During cross-examination, there was testimony that appellant participated in random drug screening two times per week and that during the case plan, the only positive screen that appellant provided was positive screen for alcohol in December of 2021.  Gabel admitted that CommQuest deemed appellant successfully completed for her substance use treatment with the Women's Empowerment Group.

**{¶17}** Dr. Aimee Thomas testified that she was a psychologist and that appellant was referred to her for a parenting evaluation by SCDJFS. Dr. Thomas testified that appellant was experiencing severe mental health issues and was "actively psychotic" and was "very um aggressive, very ill, particularly during the initial clinical interview." Transcript at 30. Dr. Thomas testified that appellant reported having a chip in her head and that people were talking to her. During appellant's evaluation, she experienced auditory and visual hallucinations and urinated on herself. While appellant initially signed releases for access to her mental health treatment history, she retracted all but CommQuest.

**{¶18}** Dr. Thomas testified that she diagnosed appellant with schizoaffective disorder, paranoid ideation, substance use disorder, alcohol use disorder, cannabis use disorder and opioid use disorder based on appellant's disclosures to her and data from CommQuest. She recommended that appellant be stabilized on psychiatric medications, complete Goodwill Parenting classes once stabilized, that appellant receive the assistance of a case manager and that appellant complete substance abuse treatment. Dr. Thomas testified that appellant's lack of stabilization and mental health issues directly impacted her ability to safely parent and that there would be serious safety concerns if appellant were to have J.S. by herself.

**{¶19}** SCDJFS next presented testimony regarding J.S.'s best interest. Gabel testified that she was assigned to his case on September 24, 2021 and that he did not have any behavioral problems and was a healthy little boy who was meeting his developmental milestones. She testified that he had been placed in a third party kinship placement since December 29, 2021 and was in foster care prior to that. She testified

that other relative placements had been denied for multiple reasons, including appellant's refusal to provide information.

**{¶20}** Gabel testified that appellant was doing well in the home and that they had a daughter around his age. He was thriving in the home and had a strong attachment to his caregivers. She testified that the family was interested in adopting J.S. and that he would benefit from adoption because he deserved permanency. According to Gabel, J.S. was not attached to appellant. She testified that it was in his best interest for court to grant permanent custody.

**{¶21}** Attorney Niki Reed, the Guardian ad Litem, made a statement on the record to the court. She recommended that permanent custody be granted to SCDJFS because it was in the child's best interest. She opined that additional time for appellant to work case services would not make her capable of safely caring for him and that she did not believe that J.S. was bonded with appellant.

**{¶22}** The trial court, pursuant to a Judgment Entry filed on April 15, 2022, terminated appellant's parental rights and granted permanent custody of J.S. to SCDJFS. The trial court issued its findings of fact on the same date. The trial court found that, despite reasonable case planning and diligent efforts by SCDJFS, appellant had failed to remedy the conditions that caused J.S. to be placed and that severe and chronic mental illness and chemical dependency rendered appellant incapable of providing a home within one year on April 13, 2022. The trial court found, therefore, that J.S. could not and should not be placed with appellant within a reasonable period of time a

**{¶23}** Appellant now appeals, raising the following assignments of error on appeal:

**{¶24}** "I. THE TRIAL COURT'S JUDGMENT THAT J.S. CANNOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**{¶25}** "A. THE TRIAL COURT ERRED IN FINDING APPELLEE MADE REASONABLE AND DILIGENT EFFORTS TO PREVENT THE NEED FOR PLACEMENT AND/OR MAKE IT POSSIBLE FOR THE CHILD TO RETURN HOME.

**{¶26}** "II. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

## I, II

**{¶27}** Appellant, in her two assignments of error, appeals the decision of the Stark County Court of Common Pleas, Juvenile Court Division, granting appellee, Stark County Department of Job and Family Service's Motion for Permanent Custody and finding that the grant of permanent custody was in the best interest of the child.

**{¶28}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978).

**{¶29}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court

schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶30} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

{¶31} (a)  The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

{¶32} (b)  the child is abandoned;

{¶33} (c)  the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

{¶34} (d)  the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

**{¶35}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶36}** Parental placement within a reasonable time: R.C. 2151.414(B)(1)(a):

**{¶37}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

**{¶38}** R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

**{¶39}** (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a

child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

{¶40} (1)  Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

{¶41} (2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

**{¶42}** (16) Any other factor the court considers relevant.

**{¶43}** In the case sub judice, appellant challenges the trial court's finding that appellee made reasonable and diligent efforts to prevent the need for placement and/or make it possible for the child to return home. There was testimony that a case plan was developed to address the initial concerns with appellant and that Gabel attempted to work with appellant to assist her in completing her case plan. Gabel testified that appellant did not agree with the agency being involved and was not open to any feedback or help that she tried to provide her. Appellant did not want agency help and refused to sign releases. As noted by the trial court, she did not think that she had concerns and did not believe that she needed help.

**{¶44}** Moreover, as is stated above, the trial court also alternatively found pursuant to R.C. 2151.414(E)(2) that appellant's "severe and chronic mental illness and chemical dependency "rendered her incapable of providing a home within one year of April 13, 2022. At the hearing, there was testimony that appellant, who had been diagnosed with schizoaffective disorder, paranoid ideation, substance use disorder, alcohol use disorder, cannabis use disorder and opioid use disorder, denied that she had any significant mental health concerns. Appellant had both auditory and visual hallucinations and alleged that there was a chip implanted in her head. She also was talking to people who were not present and had quit taking her medications. The trial court noted that appellant's mental health was the greatest concern and that it was not stabilized. There also was testimony that appellant still had an issue with alcohol.

**{¶45}** We find, therefore, that the trial court's finding that J.S. could not be placed with appellant within a reasonable period of time was not against the manifest weight and

sufficiency of the evidence and that the trial court did not err in finding that appellee made reasonable and diligent efforts to prevent the need for placement and/or make it possible for J.S. to return home.

**{¶46}** Appellant next challenges the trial court's finding that it was in J.S.'s best interest for permanent custody to be granted to SCDJFS.

**{¶47}** An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26. R.C. 2151.414(D)(1) sets out a non-exhaustive list of factors the court must consider:

**{¶48}** R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

**{¶49}** The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

**{¶50}** No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* Slip Opinion No. 2020-Ohio-5102, 2020WL6439610 (Nov. 3, 2020), ¶33.

**{¶51}** At the hearing, there was testimony that J.S. had no behavioral problems and was a healthy little boy. Gabel testified that he had been placed in a third-party kinship placement since December of 2021 and was doing well in the home and was bonded to everyone in the home. Gabel testified that the family was interested in adopting J.S. and that he would benefit from adoption. She further testified that she did not believe that J.S. was bonded with appellant and that permanent custody was in his best interest. According to her, other relative placements had been denied for multiple reasons, including appellant's reluctance to provide information.

**{¶52}** As is stated above, Nikki Reed, the Guardian ad Litem, in her statement to the court, recommended that permanent custody be granted to SCDJFS because it was in the child's best interest. She opined that additional time for appellant to work case services would not make her capable of safely caring for him and that she did not believe that J.S. was bonded with appellant.

**{¶53}** Based on the foregoing, we find that the trial court's judgment that J.S.'s best interest would be served by granting permanent custody to SCDJFS was not against the manifest weight and sufficiency of the evidence.

**{¶54}** Appellant's two assignments of error are, therefore, overruled.

{¶55}  Accordingly, the judgment of the Stark County Court of Common Pleas, Juvenile Court Division, is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.