**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re B.C.,* Slip Opinion No. 2014-Ohio-4558.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4558

IN RE B.C.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re B.C.,* Slip Opinion No. 2014-Ohio-4558.]**

*Domestic relations—Parental rights—Due process does not require that parent be afforded delayed appeal from judgment terminating parental rights.*

(Nos. 2013-1932 and 2014-0181—Submitted May 28, 2014—Decided October 16, 2014.)

APPEAL from and CERTIFIED by the Court of Appeals for Clark County, No. 2013-CA-72.

_____

SYLLABUS OF THE COURT

Due process does not require that a parent be afforded the right to file a delayed appeal from a judgment terminating parental rights.

_____

LANZINGER, J.

{¶ 1} The issue in this appeal is whether due process requires that a parent whose parental rights have been terminated be afforded the right to a delayed appeal from the judgment of termination, comparable to the delayed

appeal afforded to certain defendants by App.R. 5(A). We hold that due process does not entitle the parent in such a case to file a delayed appeal.

**Case Background**

{¶ 2} On October 25, 2011, appellee, Family and Children Services of Clark County ("FCSCC") was granted an ex parte order to remove B.C., d.o.b. 5/4/2010, from the care of his mother, the appellant. The complaint for temporary shelter care and temporary custody filed the next day contains the following allegations.[1]

{¶ 3} FCSCC became involved with appellant and B.C. in September 2011 due to a referral stating that appellant needed assistance with housing, employment, and benefits. A social worker made contact with appellant, but appellant failed to appear for an appointment, left her place of residence, and did not provide her forwarding address. FCSCC received a second report in October 2011 that appellant had overdosed and that B.C. was not being properly supervised. A social worker arranged for appellant and B.C. to stay at Hannah House, a transitional shelter for homeless mothers and their children, but appellant failed to participate in the shelter program and was asked to leave. The social worker received information that B.C. was "wild" due to lack of stability and that appellant was not properly caring for her son. B.C. also had a cleft palate that needed medical attention.

{¶ 4} The court granted temporary shelter care to FCSCC, appointed a guardian ad litem ("GAL") for B.C., and appointed an attorney to represent appellant. The GAL filed a report indicating that B.C. had been diagnosed at birth with Pierre Robin Syndrome, which may have caused some hearing loss. B.C. had

---

[1] The complaint stated that B.C.'s alleged father had an outstanding warrant, was an alleged heroin user, and had a criminal conviction for aggravated assault. Genetic testing ordered by the court established paternity. The father was joined as a party and participated at the mediation session. He was appointed counsel but made no other appearances and did not otherwise contest the decision of the juvenile court.

not received any medical treatment since October 2010, was behind on his immunizations, and was delayed in his speech. Following a hearing, the juvenile court granted temporary custody to FCSCC in an order filed December 16, 2011.

{¶ 5} A case plan was established with the goal of reunification of mother and son. But when appellant continued to neglect her son, that goal changed to arranging an adoption, and on October 26, 2012, FCSCC filed a motion to modify temporary custody to permanent custody.

{¶ 6} Near this time, Steve and Susan Franko filed a motion to be made a party to the proceeding pursuant to Juv.R. 2(Y). According to their affidavit, the Frankos met B.C. in February 2012 at his foster home and continued to interact with him over the following months. They stated that they would seek legal custody if they were made parties to the action. FCSCC opposed the motion, stating that there was not a sufficient relationship with B.C. to qualify them as parties and that from May 2012, B.C. had been placed with a new foster family who was interested in adopting him.

{¶ 7} The court held a hearing on FCSCC's motion for permanent custody in December 2012 and ordered mediation. According to the parties' memorandum of understanding dated December 19, 2012, both biological parents opposed the Frankos' motion to intervene. Appellant also stated that she agreed that B.C. should be placed in the permanent custody of FCSCC. The juvenile court denied the Frankos' motion to intervene.

{¶ 8} On December 21, 2012, appellant appeared before the court and was found to have knowingly and voluntarily surrendered her parental rights and to have agreed that it was in B.C.'s best interest that the motion for permanent custody be granted. Permanent custody was awarded to FCSCC on February 12, 2013.

**{¶ 9}** On August 23, 2013, B.C.'s adoption by his foster family was finalized. Four days later, appellant filed a notice of appeal and a motion for leave to file a delayed appeal with the Second District Court of Appeals.

**{¶ 10}** The Second District noted that App.R. 4(A) requires that a notice of appeal be filed within 30 days of the judgment entry or within 30 days of service if service has not been made on a party within three days of the judgment entry. The court found that service had been accomplished on February 12, 2013, the same day that the order granting FCSCC permanent custody was filed. The appellate court also determined that there is no authority for filing a notice of appeal from a judgment terminating parental rights after the expiration of the 30-day period. Because the notice of appeal was not timely filed, the Second District dismissed the appeal.

**{¶ 11}** The Second District, however, granted appellant's motion to certify a conflict, holding that its judgment conflicted with the judgment of the Fifth District in *In re Westfall Children*, 5th Dist. Stark No. 2006 CA 00196, 2006-Ohio-6717. We recognized that a conflict exists and accepted the following question certified to us for our review: "Do the delayed appeal provisions of App.R. 5(A) extend to cases involving the termination of parental rights?" 138 Ohio St.3d 1424, 2014-Ohio-692, 3 N.E.3d 1223. We also accepted appellant's discretionary appeal. 137 Ohio St.3d 1473, 2014-Ohio-176, 2 N.E.3d 268. The sole issue before this court is whether due process requires that a delayed appeal, akin to the delayed appeal provided to certain defendants by App.R. 5(A), must be provided to a parent from a judgment terminating parental rights.

### Analysis

*Time to File an Appeal*

**{¶ 12}** App.R. 4 governs when an appeal may be taken as a matter of right. App.R. 4(A) establishes:

A party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure.

{¶ 13} App.R. 4(B) lists five exceptions to the 30-day period: (1) multiple or cross-appeals, (2) civil or juvenile postjudgment motions, (3) criminal and traffic postjudgment motions, (4) appeals by the prosecution pursuant to Crim.R. 12(K) or Juv.R. 22(F), and (5) partial final judgments or orders. None of these exceptions apply in this case.

{¶ 14} App.R. 5, however, permits appeals by leave of court under certain circumstances. It provides:

(A)     Motion by defendant for delayed appeal.

(1) After the expiration of the thirty day period provided by App.R. 4(A) for the filing of a notice of appeal as of right, an appeal may be taken by a defendant with leave of the court to which the appeal is taken in the following classes of cases:

(a) Criminal proceedings;

(b) Delinquency proceedings; and

(c) Serious youthful offender proceedings.

{¶ 15} A proceeding involving the termination of parental rights is not one of the types of cases for which delayed appeals are permitted under the appellate rule.

*Due Process Rights*

{¶ 16} Although neither App.R. 5(A)(1) nor any other rule or statute allows a delayed appeal from an order granting permanent custody of a child to a nonparent, appellant nonetheless contends that due process requires that a delayed appeal be provided to the parent in such cases. She argues that both this court and the United States Supreme Court have recognized that parents have a "basic civil right" to raise their children. Because the termination of parental rights is the most severe legal intrusion the state can make into the sanctity of the family, appellant contends that parents should be afforded the same right to a delayed appeal that App.R. 5(A) provides to certain criminal defendants and juveniles. She alleges that she received ineffective assistance of counsel, and as a result, she did not understand the ramifications of her decision to relinquish her rights. She alleges that her appointed counsel did not explain the differences between legal custody and permanent custody and did not tell her that if legal custody was awarded to the Frankos, she would retain some residual rights. Appellant states that to preserve the integrity of the legal system and to ensure that her due-process rights have been satisfied, she should be allowed to file a delayed appeal.

{¶ 17} A parent's relationship with his or her child is among the "associational rights" sheltered by the Fourteenth Amendment to the United States Constitution against unwarranted usurpation, disregard, or disrespect by the state. *M.L.B. v. S.L.J.*, 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). We have found that the due-process rights provided by the Fourteenth Amendment and those provided by Article I, Section 16 of the Ohio Constitution are coextensive. *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544-545, 38 N.E.2d 70 (1941). The fundamental requisites of due process of law in any proceeding are notice and the opportunity to be heard. *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865

(1950). It is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In the context of termination of parental rights, due process requires that the state's procedural safeguards ensure that the termination proceeding is fundamentally fair. *Santosky v. Kramer,* 455 U.S. 745, 753-754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

{¶ 18} Whether procedural due process has been satisfied generally requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

{¶ 19} With regard to the first factor, appellant has a significant private interest. The United States Supreme Court has stated that parents' interest in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct 2054, 147 L.Ed.2d 49 (2000). We also have long held that parents who are "suitable" have a "paramount" right to the custody of their children. *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877); *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). "Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.'

*In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45, 54. Therefore, parents 'must be afforded every procedural and substantive protection the law allows.' *Id.*" *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997).

{¶ 20} But it is not only appellant's private interest that we must consider. As we have previously noted, " 'the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.' " *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App.1974). Ultimately, parental interests are subordinate to the child's interest when determining the appropriate resolution of a petition to terminate parental rights. *Id.* B.C.'s private interest, at least initially, mirrors his mother's, i.e., he has a substantial interest in preserving the natural family unit. But when remaining in the natural family unit would be harmful to him, B.C.'s interest changes. His private interest then becomes a permanent placement in a stable, secure, and nurturing home without undue delay. *See In re Adoption of Zschach,* 75 Ohio St.3d 648, 651, 665 N.E.2d 1070 (1996). "There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 513-514, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982).

{¶ 21} The second *Mathews* factor evaluates the risk of erroneous deprivation of appellant's interest under the current procedures and the probable value, if any, of additional or substitute procedural safeguards. Appellant appeared before the trial court and voluntarily surrendered all of her parental rights. The trial court held a hearing and made the statutory findings necessary to

grant FCSCC permanent custody.[2] Throughout this proceeding, appellant was represented by counsel and had a statutory right to appeal, which she did not exercise.

**{¶ 22}** Appellant now claims, however, that she received ineffective assistance of counsel because her attorney did not explain that she would retain some residual parental rights if the Frankos had been granted legal custody. But while the Frankos' motion was pending, appellant opposed the motion and agreed that FCSCC should be granted permanent custody. Even if appellant had supported the Frankos' motion to intervene, however, FCSCC vigorously opposed it. Nothing in the record indicates that the trial court erred in denying intervention. The trial court found that, although the Frankos are loving and well-intentioned people, their contact and connection with B.C. were minimal at best, and they lacked standing to intervene. A consideration of the record leads us to conclude that risk of error in this case was minimal under existing procedures and that a delayed appeal is not necessary to protect against an erroneous deprivation of appellant's interest.

**{¶ 23}** The final *Mathews* factor is the government's interest, including the function involved and the fiscal or administrative burdens of providing additional or substitute procedural requirements, i.e., the delayed appeal. The government's interest is twofold. First, the state has an interest in minimizing fiscal and administrative costs. However, this interest does not override appellant's significant private interest in the right to a relationship with her child. Second, the state has an interest in the function involved in these cases, i.e., the state's role as parens patriae in promoting the welfare of the child. *Santosky*, 455 U.S. at 766, 102 S.Ct. 1388, 71 L.Ed.2d 599.

---

[2] In its order, the trial court noted that appellant was incarcerated and was awaiting criminal court proceedings for an aggravated-robbery charge.

**{¶ 24}** To allow delayed appeals for a parent whose parental rights have been terminated would inject further uncertainty into the process of placing the child in a permanent home and postpone resolution of custody, contrary to the child's best interest. Appellant suggested at oral argument that we judicially limit the ability to file for a delayed appeal to one year after the judgment terminating parental rights. But even a one-year extension is inconsistent with Ohio's adoption laws. The expedited appeal process was designed to promote permanency and to alleviate the pervasive limbo of the foster-care system. *See In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187, ¶ 22, 33, 35-36. We are not persuaded that due process requires the additional delay that appellant espouses.

**{¶ 25}** Although appellant has a significant private interest, the second and third *Mathews* factors weigh against providing a delayed appeal to appellant in this case. Procedural safeguards already exist in parental-termination cases. R.C. Chapter 2151 contains the procedures for cases involving juveniles, including the award of permanent custody of a child away from the natural parents. R.C. 2151.01 requires courts to construe those provisions liberally in favor of retaining the family unit, "separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). Division (B) further provides that the purpose of the statutes is also to "provide judicial procedures * * * in which the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced." For example, R.C. 2151.35(A)(2) requires testimony and other oral proceedings to be recorded; 2151.35(C) ensures parental notice of adjudicatory and dispositional hearings; 2151.352 gives the parent a right to appointed counsel; 2151.353(B) provides that when a motion for temporary or permanent custody is filed, parents shall be provided a full explanation that permanent custody

permanently divests the parents of all rights and that temporary custody is the removal of the child from their legal custody.

{¶ 26} R.C. 2151.414 sets forth the procedures that follow the filing of a motion for permanent custody, many of which are designed to protect the parent's interest in retaining the parent-child relationship. A hearing is required to be held within 120 days. R.C. 2151.414(A)(1). The agency moving for permanent custody must prove that the grant of permanent custody is in the best interest of the child by clear and convincing evidence. R.C. 2151.414(B)(1). Before awarding permanent custody, the court is required to consider all relevant factors, including the child's interaction and relationship with the parent. R.C. 2151.414(D)(1). A written report from a guardian ad litem must be submitted to the court before the hearing under R.C. 2151.414(C). Portions of the statute require clear and convincing evidence when the child cannot be placed with either parent within a reasonable period of time. R.C. 2151.414(D) and (E). The agency is required to prove that it used reasonable efforts to reunite parent and child. R.C. 2151.419(A)(1) .

{¶ 27} In summation, statutory protections already ensure that a parent faced with termination of parental rights has the opportunity to participate in the proceedings fully, with notice, representation, and the remedy of an appeal. We therefore hold that Ohio's current procedures comport with due process and that a delayed appeal is not constitutionally required to protect the parent's interest.

### Conclusion

{¶ 28} We answer the certified-conflict question in the negative and affirm the judgment of the Second District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

O'NEILL, J., dissents.

_____

**O'NEILL, J., dissenting.**

{¶ 29} This court has consistently held that the termination of parental rights is the family-law equivalent of the death penalty. *See, e.g., In re D.A.,* 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 10; *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). For whatever reason, there is always the possibility of a parent "waking up" after it is too late and finding no remedy, with the result often being a child languishing in the purgatory of foster care. Delayed appeals in criminal matters pursuant to App.R. 5 are only granted on a case-by-case basis and the motion in support of a delayed appeal must included the reasons for the delay. But alas, parents who have lost their children can look to neither a statute nor a rule for the same delayed-appeal right that Ohio has chosen to grant to criminal defendants.

{¶ 30} Let me give a hypothetical that demonstrates my point. A mother is a hopeless drug addict who is not a responsible parent. The state steps in and ultimately takes permanent custody of the five-year-old, with the noble plan of finding the child a permanent placement. Unfortunately, as happens in so many cases, no permanent placement is found, and the child bounces from foster home to institution to foster home. Five years later, the mother enters rehabilitation and miraculously kicks her habit and stays clean and sober for two years. She wants her kid back, and she is ready to resume her role as parent. She cannot. The termination of her parental rights is complete, and the Latin god of res judicata has closed the courthouse doors forevermore.

{¶ 31} The Supreme Court of Ohio can promulgate a rule authorizing the appellate court to grant a hearing on a delayed appeal where necessary. Surely society, and the judiciary, would be well served by a mechanism by which a competent court could revisit the case. Isn't this parent entitled to the same due process as a petty thief?

**{¶ 32}** I dissent.

_____

D. Andrew Wilson, Clark County Prosecuting Attorney, and Andrew P. Pickering, Assistant Prosecuting Attorney, for appellee.

Linda Joanne Cushman, for appellant.

Robert J. McClaren, urging affirmance for amicus curiae, Public Children Services Association of Ohio.

_____