[Cite as *In re L.P.*, 2023-Ohio-1821.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

IN RE L.P., ET AL.

Minor Children

[Appeal by E.P., Mother]

:
:
:
:
:
:
:

No. 112369

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 1, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-21901367 and AD-21901368

---

### *Appearances:*

Gregory T. Stralka, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young and Michele Wessel, Assistant Prosecuting Attorneys, *for appellee* Cuyahoga County Division of Children and Family Services.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant, E.P. ("Mother"), appeals the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that granted permanent custody of her children, L.P. and A.P., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") and terminated her

parental rights.  Upon a careful review of the record, we affirm the juvenile court's decision.

**Facts and Procedural History[1]**

{¶ 2}    L.P. and A.P. are the minor children of Mother.  The children's father is deceased.  On February 22, 2021, CCDCFS filed a complaint for neglect and for temporary custody to CCDCFS.  The children were committed to the predispositional temporary custody of CCDCFS.  The action was brought after the children, at ages seven and eight, were discovered alone in a hotel room where they had been living with Mother.  Mother has two children who previously had been placed in the legal custody of a relative.  Mother has a history of substance-abuse issues, which included heroin, fentanyl, and alcohol.  She admitted relapsing in February 2021 and was stressed because of an eviction and the recent death of her husband.

{¶ 3}    In May 2021, the children were adjudicated to be neglected and were committed to the temporary custody of CCDCFS.  Mother stipulated to the complaint as amended, including among other allegations, that Mother needed to provide appropriate supervision for the children, to maintain a sober lifestyle, to obtain stable and appropriate housing, and to ensure that she uses appropriate judgment and parenting skills.  A case plan was developed to address Mother's issues with substance abuse, housing/provision of basic needs, parenting, and

---

[1] We have thoroughly reviewed the record and provide a brief overview herein.

mental health.  During the course of the proceedings, semiannual administrative reviews were conducted, two extensions of temporary custody to CCDCFS were granted, amended case plans were approved, and relevant services were provided. On July 27, 2022, CCDCFS filed a motion to modify temporary custody to permanent custody to CCDCFS.  The motion was set for trial in December 2022, but trial was continued to January 2023 at Mother's request.

{¶ 4}  Trial was held on January 9, 2023, nearly two years after the children were removed from Mother's care.  On the date of the hearing, counsel for Mother requested a continuance that was denied by the juvenile court.

{¶ 5}  The juvenile court heard testimony from the extended service worker for CCDCFS on the case (hereafter "the caseworker").  The testimony reflects that despite the assistance of the agency and Mother's participation in services, significant concerns remained.  Although Mother completed an intensive out-patient treatment program, since leaving the program, she had not produced any AA meeting sheets and had not completed the twelve-step program.  Mother had been asked to leave a sober living house, which she falsely represented had closed.  In mid-August 2022, Mother refused a drug test, and then she had two positive screenings — in late-August 2022 for fentanyl, and in September 2022 for amphetamines, methamphetamines, fentanyl, and alcohol.  Mother confirmed a positive drug screen and stated she "believed that it was out of her system."  The agency did not believe Mother had benefitted from the substance-abuse services she completed.  Mother had visitation with the children, but some of the conversations

she had with the children were deemed inappropriate and a supportive-visit coach eventually was provided. Mother had completed a parenting class; however, the children had expressed concern about not wanting to visit Mother, being alone with Mother, and not wanting to return to her care. As the caseworker expressed, "[t]hey feel that they're safe where they are. They don't feel that they'll be safe if they go back with their mother." Mother had yet to secure stable housing despite being offered referrals and given assistance. Shortly before the hearing, Mother provided a copy of a signed lease; however, Mother had not maintained stable employment throughout the case, and the social worker was not able to verify her current employment.

{¶ 6} The children initially were placed together in a foster home, and thereafter, in March 2022, they were placed with A.K., who is an interested individual. The children were described as thriving in their placement with A.K. where their basic needs and emotional needs are being met. The children received counseling throughout much of the case. Mother received grief counseling on her own while in her treatment program but thereafter stopped. She began requesting family counseling. However, it was recommended by the children's counselor that Mother first obtain a counselor of her own.

{¶ 7} The caseworker believed permanent custody should be awarded to the agency. The children's guardian ad litem recommended permanent custody to CCDCFS. The juvenile court conducted an in camera interview with the children and was aware of their wishes.

{¶ 8} On January 11, 2023, the juvenile court issued a journal entry in each child's case that granted CCDCFS's motion to modify temporary custody to permanent custody. The juvenile court engaged in the proper analysis, set forth findings that are consistent with the record, and made the requisite statutory determinations for awarding permanent custody pursuant to R.C. 2151.414. The juvenile court found the factor under R.C. 2151.414(B)(1)(d) applied and determined "by clear and convincing evidence" that "[t]he child has been in temporary custody of a public children services agency * * * for twelve or more months of a consecutive twenty-two-month period." In each case, the juvenile court considered all relevant best-interest factors, including the enumerated factors under R.C. 2151.414(D)(1)(a)-(e), which are specifically set forth in the juvenile court's opinion, and determined "by clear and convincing evidence that it is in the best interest of the child to be placed in the Permanent Custody of CCDCFS." The juvenile court also included a reasonable-efforts determination in each decision, finding that "reasonable efforts were made to prevent the removal of the child from the home, or to return the child to the home and finalize the permanency plan, to wit: reunification." The juvenile court referenced relevant services that had been provided. The juvenile court determined "by clear and convincing evidence that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, pursuant to R.C. 2151.414(E)" and listed the factors under R.C. 2151.414(E)(1), (2), (4), (14), (15), and (16).

**{¶ 9}** The juvenile court committed each child to the permanent custody of CCDCFS and terminated Mother's parental rights. Mother timely appealed.

**Legal Analysis**

**{¶ 10}** Although it is well established that the right to parent one's child is a fundamental right, the government has broad authority to intervene to protect children from abuse and neglect. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); R.C. 2151.01. Ultimately, the natural rights of a parent are always subject to the ultimate welfare of the child, which is the controlling principle to be observed. *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

**{¶ 11}** Mother claims under her first assignment of error that the agency failed to provide sufficient evidence that it made diligent efforts to provide relevant services pursuant to R.C. 2151.414(E)(1). Although the agency did not have to show reasonable case planning and diligent efforts at the time of the permanent custody hearing, "[t]o the extent that the trial court relie[d] on R.C. 2151.414(E)(1) at the permanency hearing, the court must examine 'the reasonable case planning and diligent efforts by the agency to assist the parents' when considering whether the child cannot or should not be placed with the parent within a reasonable time." *In re C.F.* at ¶ 42.

**{¶ 12}** In the case of each child herein, the juvenile court made a finding under R.C. 2151.414(E)(1) that

[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

{¶ 13} In its decision, the juvenile court observed relevant services to which Mother was referred, including substance abuse, mental health, parenting, and basic needs/housing services. Mother maintains that she worked to complete the case plan objectives; however, she contends that she was not afforded relevant services, such as family counseling, or provided other services in a timely manner, such as a supportive visitation coach. We are not persuaded by these or her other arguments. The record demonstrates that despite the reasonable case planning and diligent efforts of the agency, significant concerns remained. Mother had not maintained sobriety, had not maintained stable housing, had not maintained stable and verifiable employment, and had failed to demonstrate significant changes in her parenting and decision-making with the children.

{¶ 14} At the time Mother began requesting family counseling, she had stopped receiving counseling of her own. In the interest of the children, it was recommended by the children's counselor that Mother should obtain her own counselor and that they could then all have counseling together. Although Mother asserts that the agency should have done more and provided services like a supportive visitation coach earlier, in considering reasonable case planning and diligent efforts, it is not a question of whether the children services agency could

have done more; rather, the issue is whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *See In re Q.S.*, 8th Dist. Cuyahoga No. 111416, 2023-Ohio-712, ¶ 125, citing *In re A.F.*, 8th Dist. Cuyahoga No. 110503, 2021-Ohio-4519, ¶ 35.

{¶ 15} Although Mother also takes issue with the caseworker referring to herself as a "social worker" for CCDCFS, the witness admitted on cross-examination that the reference was in a general sense and that she was not a licensed social worker. Indeed, this court has previously recognized that in this context, such a misstatement does not undermine credibility and is not reversible error. *See In re G.T.*, 8th Dist. Cuyahoga No. 110936, 2022-Ohio-1406, ¶ 46.

{¶ 16} Insofar as Mother points to evidence favorable to her, the juvenile court was permitted to consider all material and relevant evidence in rendering its disposition. At the permanent-custody hearing, the juvenile court recognized what Mother and the children had gone through and commended Mother, despite her relapses, for continuing to work toward trying to get the children back. However, in the nearly two years that the case was pending, Mother simply had not demonstrated that she had benefitted from the services or changed her behavior so as to permit reunification of the children at the time of trial. As the juvenile court determined, Mother had failed to remedy the cause for removal. The juvenile court did not abuse its discretion in reaching a conclusion under R.C. 2151.414(E)(1).

{¶ 17} Upon our review, we find the juvenile court's finding under R.C. 2151.414(E)(1) is supported by clear and convincing evidence in the record, as are

the juvenile court's findings pursuant to R.C. 2151.414(E)(2), (4), (14), (15), and (16). Although Mother refers to the lack of reasons to support each finding, the juvenile court was not required to detail its reasoning. The findings were properly supported by the record. Nonetheless, the juvenile court did include some of its reasoning in regard to the best-interest factors under R.C. 2151.414(D)(1). In each case, the juvenile court listed the enumerated factors and noted the following: "[t]he child has a strong bond with caregiver, sibling, and caregiver's mother"; "[t]he child does not wish to be returned to Mother" and "the Court conducted an in-camera interview with the child and is aware of the child's wishes"; "[t]he child has been in Agency custody since February, 2021[;] and [t]he child deserves a safe and stable home environment where [he/she] is safe, [his/her] needs can be met, and [he/she] can thrive" and "[t]his cannot be achieved with either parent as father is deceased and mother has failed to remedy the cause for removal" and "[n]o other family members are willing or appropriate to care for the children[.]" The juvenile court also noted in regard to R.C. 2151.414(E)(16), which is a catchall provision, that Mother had two other children removed from her care and placed in the legal custody of a relative.

{¶ 18} Based upon our review of the entire record, we find there is clear and convincing evidence to support all of the juvenile court's statutory determinations, and we do not find the decision to award permanent custody of each child to the agency to be against the manifest weight of the evidence. The first assignment of error is overruled.

{¶ 19} Under her second assignment of error, Mother claims the juvenile court abused its discretion when it failed to grant her request for a continuance to allow the family to engage in services. Generally, the decision to grant or deny a motion for continuance is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

{¶ 20} Pursuant to R.C. 2151.414(A)(2), the juvenile court is to hold the permanent-custody hearing no later than 120 days after the agency files its motion for permanent custody, "except that for good cause shown," the court may grant a reasonable continuance, and the court is to dispose of the motion for permanent custody no later than 200 days after the agency files its motion. Additionally, pursuant to Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties" and pursuant to Loc.R. 35(C) of the Cuyahoga County Court of Common Pleas, Juvenile Division, "[n]o case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing * * *."

{¶ 21} Our review reflects that good cause was not shown in this matter and that it was not in the best interest of the children to delay their need for permanency. The stated basis for the continuance was that Mother "had recently obtained housing" and that there were ongoing issues "between mother and the children that need[ed] to be addressed through more professional services," which "Mother's

been asking for * * * for some time * * *." CCDCFS opposed the continuance, noting the trial date had already been continued upon Mother's request in December 2022, and that the Agency had only recently received a lease agreement from Mother, despite asking for months for the information. The juvenile court denied the request at the start of the proceeding; but Mother renewed the request at its conclusion, with counsel asking for time for Mother to demonstrate six months of sobriety and for the opportunity to have the family engage with professionals to address the children's relationship with Mother. The agency again opposed the continuance, and the guardian ad litem also opposed the request. Mother's renewed request for a continuance was denied by the juvenile court.

{¶ 22} The juvenile court did not find good cause for continuing the matter. The juvenile court stated that upon the testimony presented and "where we're at in this case as well as my in-camera, I do not find that it would be in the best interest of the children to continue this any further." Indeed, the cases had been pending for nearly two years, during which time extensions and a continuance had already been granted. The caseworker indicated that it was not realistic to expect Mother to be able to have documented sobriety of six months by the two-year mark. The guardian ad litem also expressed that reunification was not going to occur within the next 30 days.

{¶ 23} After examining the record in this case, we conclude that the juvenile court did not abuse its discretion in denying the requested continuance. Mother's second assignment of error is overruled.

**{¶ 24}** After thoroughly reviewing the entire record, we overrule Mother's assignments of error and affirm the juvenile court's decisions granting permanent custody of each child to CCDCFS.

**{¶ 25}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR