[Cite as *In re AR.L.*, 2024-Ohio-231.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: AR.L., R.L., AND AZ.L. | : | APPEAL NOS. C-230578 |
| | | C-230592 |
| | : | TRIAL NO. F15-2811X |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: January 24, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Janice H. Barr*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Megan E. Busam*, Assistant Public Defender, for the Guardian Ad Litem for the Minor Children,

*Jon R. Sinclair*, for Appellant Mother,

*Cynthia S. Daugherty*, for Appellant Father.

**KINSLEY, Judge.**

**{¶1}** Defendants-appellants R.P. ("Father") and A.L. ("Mother") appeal from the juvenile court's order granting permanent custody of their children to the Hamilton County Department of Job and Family Services ("JFS"). In Father's sole assignment of error, he asserts that the juvenile court erred in adopting the magistrate's decision without giving him an opportunity to object. And in Mother's sole assignment of error, she asserts that the juvenile court's decision to grant custody to JFS was not supported by sufficient evidence and against the manifest weight of the evidence.

**{¶2}** Because Father had constructive notice of the magistrate's decision but failed to object and further waived any issue regarding the sufficiency of his notice, we overrule Father's assignment of error. And because there was clear and competent evidence supporting the juvenile court's decision, we also overrule Mother's assignment of error. Accordingly, the judgment of the juvenile court is affirmed.

### *Factual and Procedural Background*

**{¶3}** Mother and Father have two children together, R.L. and Ar.L. Mother also had Az.L. with C.S., who has not participated in these proceedings and has had no contact with Az.L. On June 27, 2021, police officers responded to a report of an altercation between Mother and Father in the presence of all three children. Subsequently, JFS filed a complaint seeking temporary custody of the children and alleging that the children were neglected and dependent. The magistrate granted interim temporary custody of the children to JFS.

**{¶4}** When JFS filed an initial case plan on October 21, 2021, Mother was incarcerated. JFS also noted in the case plan that it had a protection order against Mother due to her assault of a children's service worker. On November 3, 2021, all three children were adjudicated dependent, and the neglect allegation was dismissed. On November 4,

2021, the magistrate placed the children in the temporary custody of JFS after a dispositional hearing. The magistrate later extended temporary custody.

{¶5} JFS moved for permanent custody. In her report and recommendation, the guardian ad litem ("GAL") for the children noted that Mother had not engaged in consistent visitation with the children or any services in light of her recent incarceration. The GAL further noted that Mother had a history of psychiatric diagnoses and hospitalizations. Additionally, the GAL cast doubt on Father's ability to provide a safe environment for R.L. and Ar.L., given his violent and aggressive visits with the children at the Family Nurturing Center ("FNC") and his inconsistent participation in domestic violence and parenting education classes. And finally, the GAL noted that all three children wished to remain in their temporary placements. The GAL, therefore, recommended that placing all three children in the permanent custody of JFS was in their best interests.

{¶6} The magistrate held a hearing on JFS's motion for permanent custody on June 14, 2023. Father was present at the hearing, but Mother was not. Ben Gawin, a visitation facilitator at the FNC, testified. Gawin testified that during Father's visits with R.L. and Ar.L., he frequently resorted to aggressive forms of discipline, including yelling and hitting. Gawin further testified that although FNC staff tried to redirect Father, he refused to listen. Eventually, Father was removed from visitation at the FNC.

{¶7} Anthony Niederhelman, a caseworker with JFS, also testified. He testified that in the initial case plan, Mother was referred for parenting classes, a diagnostic assessment, visitation, and domestic violence classes for reunification. He testified that Mother had been diagnosed with schizophrenia with bipolar features. He further testified that when Mother was released from incarceration in early 2023, she contacted him. But Mother became increasingly aggressive in conversations with him and eventually stopped

communicating altogether. She also did not visit her children consistently after her incarceration. In fact, she only began visiting them about a week before the hearing. She sometimes visited Az.L. at her mother's home but with reported problems. She had, however, attended parenting classes and therapy for about two months prior to the hearing.

{¶8} Niederhelman further testified that all three children were doing well in their placements. R.L. and Ar.L. were in a foster home together, and Az.L. was with her maternal grandmother. Though R.L. had been diagnosed with attention deficit hyperactivity disorder, he was improving with medication. Niederhelman testified that R.L.'s behavior had "made a 360" since being placed in his current foster home. He also testified that all three children were bonded with their caregivers. Az.L.'s maternal grandmother wished to adopt her rather than accept legal custody. And R.L. and Ar.L.'s foster parents wished to adopt them if reunification was not possible.

{¶9} Mother's most recent diagnostic assessment was submitted as an exhibit at the hearing. According to the assessment, Mother had stable housing through Talbert House, a social services organization. She received her general educational development ("GED") diploma in 2008. Though she was working for a food delivery service, she did not have reliable transportation to regularly complete deliveries. She had previously been diagnosed with schizoaffective disorder, depressive type and unspecified alcohol use disorder. She had also been incarcerated multiple times.

{¶10} Additionally, Mother's history of parenting classes with Justice Works and her therapy records from Talbert House were submitted as exhibits at the hearing. Mother attended parenting classes between March 2023 and May 2023. And according to the four therapy sessions that were documented, Mother improved with each session, but did not follow through with a prescriber as recommended by her therapist.

{¶11} On June 27, 2023, the magistrate granted JFS's motion for permanent custody. Mother objected. Father did not object, but filed a motion styled as a "Motion for Visitation Pending Objection." The juvenile court overruled Mother's objections and adopted the decision of the magistrate.

{¶12} Mother and Father now both appeal.

### Father's Failure to Object

{¶13} In Father's sole assignment of error, he contends he was not aware of the magistrate's June 27, 2023 decision until after his time to object had expired. Father therefore asks this court to remand this cause so that he may file objections to the magistrate's decision.

{¶14} "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision." Juv.R. 40(D)(3)(b)(i). Further, "[i]f any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed." *Id.* Accordingly, after Mother filed her objections to the magistrate's decision on July 5, 2023, Father had ten days from that date to file any objections. But he did not. Instead, Father filed a "Motion for Visitation Pending Objection" on October 19, 2023.

{¶15} Father did not raise any issues regarding notice before the lower court nor does he do so now. He merely argues he was unaware of the magistrate's decision until his time to object had expired. We note that the transcript of the docket and journal entries does not indicate that Father or his counsel were provided notice by mail of the magistrate's June 27, 2023 decision. While parents must be given actual notice of the permanent custody motion and the initial permanent custody hearing, constructive notice for any further proceedings may be adequate. *In re J.C.S.*, 2d Dist. Montgomery No. 29690, 2023-Ohio-5111, ¶ 54.

{¶16} For example, in *In re J.C.S.*, the court reasoned that the father had constructive notice of the permanent custody hearings, because even though service was not perfected, his counsel appeared at the hearings on his behalf. *Id.* at ¶ 56-57. Moreover, at these hearings, the father's counsel did not raise any objection regarding service. *Id.* The court therefore held that because the father had waived any issue regarding notice and otherwise had constructive notice of the permanent custody proceedings, the father's notice argument was without merit. *Id.* at ¶ 60.

{¶17} Similarly, in *In re C.B.*, the court held that the mother did not suffer any prejudice from misdelivered notices, because she had constructive notice given her attendance at the permanent custody hearings. *In re C.B.*, 4th Dist. Ross Nos. 20CA3714, 20CA3715 and 20CA3716, 2020-Ohio-5151, ¶ 23. Further, because she failed to raise any issue about her incorrect address or lack of notice at trial, the court held that she was barred from doing so on appeal. *Id.*

{¶18} Here, Father's argument fails for the same reasons. Father's October 19, 2023 motion for visitation pending objections indicates that he was aware that Mother had filed her own objections to the magistrate's decision. Therefore, Father at least had constructive notice of the magistrate's decision. *See, e.g., In re J.C.S.* at ¶ 59; *In re C.B.* at ¶ 23. And despite this, Father did not attempt to file objections once he became aware of the magistrate's decision or argue that he could not timely file objections given a lack of notice. Instead, he asks us to consider these issues for the first time on appeal. Because Father waived any issue regarding notice and otherwise had constructive notice of the magistrate's decision, we overrule Father's sole assignment of error.

### *Procedural Due Process*

{**¶19**}  Mother's sole assignment of error challenges the procedural due process she was afforded in the permanent custody proceedings and the sufficiency and manifest weight of the evidence supporting the juvenile court's permanent custody decision.  We first consider Mother's procedural due process challenge.

{**¶20**}  Mother asserts that she was not afforded the procedural protection required by law when facts not in evidence were improperly considered by the magistrate to support her permanent custody decision, which was adopted by the juvenile court.  Specifically, Mother argues that although the initial case plan and factual record from the dispositional hearing were not offered as exhibits, the magistrate still considered these records in reaching her decision.  Mother contends that the magistrate therefore improperly considered facts not in evidence.

{**¶21**}  "In the context of termination of parental rights, due process requires that the state's procedural safeguards ensure that the termination proceeding is fundamentally fair." *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 17.  And here, contrary to Mother's contentions, the magistrate only considered testimony and exhibits in evidence, and the termination proceedings were therefore fundamentally fair.  Though the case plan was not offered as an exhibit, Niederhelman testified to the services Mother was referred for in the case plan and her progress in completing these services.  In other words, Niederhelman described the case plan.  The magistrate therefore appropriately considered this evidence in reaching her decision.

{**¶22**} The magistrate also did not reference the factual findings from the dispositional hearing in her permanent custody decision, as Mother argues.  Rather, testimony and exhibits from the permanent custody hearing repeatedly referenced the

domestic violence in Mother and Father's relationship. Thus, there were facts in evidence to support the magistrate's determination, and these facts were independent from the dispositional hearing. Accordingly, Mother's assertions of procedural error are without merit.

### *Sufficiency and Manifest Weight*

{¶23} We next consider Mother's challenge to the sufficiency and manifest weight of the evidence supporting the juvenile court's permanent custody decision.

{¶24} Our review of the juvenile court's decision involving the termination of parental rights focuses on whether the court's decision was supported by clear and convincing evidence. *In re S & W*, 1st Dist. Hamilton Nos. C-230110 and C-230122, 2023-Ohio-2210, ¶ 11. "Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Id*. Where competent and credible evidence exists to support the juvenile court's judgment, we will not substitute our judgment for that of the juvenile court. *Id.*

{¶25} But sufficiency and manifest weight are reviewed under slightly different standards:

> When examining the sufficiency of the evidence, we look to the adequacy of the evidence and determine whether some evidence exists on each element. When examining the weight of the evidence, we look to the inclination of the evidence and determine whether the greater amount of credible evidence supports one side rather than the other. In doing so, we must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether—in resolving the conflicts in the evidence—the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the judgment

8

must be reversed. We must also be mindful of the presumption in favor of the finder of fact.

(Internal quotation marks and citations omitted.) *Id.* at ¶ 12.

**{¶26}** "R.C. 2151.414(B)(1) establishes a two-pronged test for courts to apply when determining whether to grant a motion for permanent custody to a public children services agency." *In re D.M.*, 1st Dist. Hamilton No. C-200043, 2020-Ohio-3273, ¶ 23. A juvenile court must find, by clear and convincing evidence, that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) applies and that permanent custody is in the best interest of the child under R.C. 2151.414(D)(1)(a)-(e). *Id.* Here, the juvenile court determined, and the record confirms, that the first prong of the permanent-custody test was satisfied as to Ar.L., R.L., and Az.L., because the children were in the temporary custody of JFS for 12 or more months of a consecutive 22-month period.

**{¶27}** And in making a best-interest determination, a juvenile court must consider the following factors under R.C. 2151.414(D)(1)(a)-(e): (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors in R.C. 2151.414(E)(7)-(11) apply.

**{¶28}** Mother focuses her argument on just one factor: whether a legally secure permanent placement was possible without a grant of permanent custody. She argues that the juvenile court did not consider that her tumultuous relationship with Father ended two

years before the permanent custody hearing, that she had secured stable housing and income, that she had engaged in mental health services, and that no caseworker ever concluded her children were unsafe with her.

**{¶29}** But Mother's argument is at odds with the best-interest determination, which is a balancing test with no one factor being dispositive. *In re D.M.*, 1st Dist. Hamilton No. C-200043, 2020-Ohio-3273, at ¶ 47 (noting that a juvenile court must consider all relevant factors under R.C. 2151.414(D)(1) and that no single factor is given greater weight or significance). At most, Mother argues that one factor was skewed incorrectly. She does not, however, argue that the juvenile court weighed all the factors improperly in light of that factor.

**{¶30}** Regardless of this deficiency in Mother's argument, we still hold that the juvenile court's permanent custody decision was supported by clear and competent evidence. Though the juvenile court did consider the steps Mother took towards reunification, it found these steps to be insufficient. At the time of the permanent custody hearing, Mother had secured stable housing, but she did not demonstrate a stable income. She infrequently worked for a food delivery service due to a lack of transportation, and there was nothing in the record indicating that she was trying to secure another job. And while she had attended therapy, she did not follow through on her therapist's recommendation to meet with a prescriber for medication, which was concerning given her psychiatric history.

**{¶31}** Additionally, although Mother completed parenting classes, the juvenile court noted that JFS still had issues with Mother's parenting, including her failure to identify parenting problems, inability to accept constructive feedback, and her frequent mood shifts and inconsistencies in truth. Further, the juvenile court considered Mother's inconsistent visits with her children, before and after her incarceration.

**{¶32}** Thus, while we commend the steps Mother took towards reunification and have no doubt that Mother deeply loves her children and wants to provide a good life for them, we hold that the record supports the juvenile court's permanent custody ruling. We therefore hold that the juvenile court's decision granting JFS permanent custody of Ar.L., R.L., and Az.L. was supported by sufficient evidence and not against the manifest weight of the evidence. Mother's assignment of error is accordingly overruled, and the judgment of the juvenile court is affirmed.

### *Conclusion*

**{¶33}** We overrule Father's assignment of error, because although Father had constructive notice of the magistrate's decision, he did not file objections. Further, we hold that Father waived any issue regarding notice. And we overrule Mother's assignment of error, because her procedural challenge is without merit and because the juvenile court's permanent custody decision was supported by sufficient evidence and not against the manifest weight of the evidence.

**{¶34}** Accordingly, the judgment of the juvenile court is affirmed.

Judgment affirmed.

**BOCK, P.J.,** and **CROUSE, J.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.