[Cite as *In re P.M.A.*, 2024-Ohio-1611.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| IN RE: P.M.A. | : |
| | : |
| | :    C.A. No. 30002 |
| | : |
| | :    Trial Court Case No. C-2020-003103-OP |
| | : |
| | :    (Appeal from Common Pleas Court-Juvenile Division) |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on April 26, 2024

. . . . . . . . . . .

MORGAN L. MCCONNELL, Attorney for Appellant

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

**{¶ 1}** Mother appeals from an order of the Montgomery County Common Pleas Court, Juvenile Division, which granted permanent custody of her child, P.M.A., to the Montgomery County Department of Job and Family Services – Children Services Division ("MCCS"). Mother's counsel had orally requested a continuance of the permanent custody hearing when Mother failed to appear at the hearing unexpectedly and without

explanation; the magistrate denied the request for a continuance. The trial court overruled Mother's objection to the denial of the continuance, and this is the only issue raised on appeal. In the absence of an abuse of discretion, the judgment of the juvenile court is affirmed.

**Facts and Procedural History**

{¶ 2} On August 21, 2020, MCCS filed a dependency complaint and a motion for an ex parte order of interim temporary custody of P.M.A., who was one week old. At the time, MCCS was aware that Mother previously had had four other children removed from her care. The court granted the motion and scheduled a hearing for August 24, 2020; the court thereafter granted interim temporary custody of P.M.A. to MCCS.

{¶ 3} On October 30, 2020, based on a finding of dependency, the juvenile court granted MCCS protective supervision of P.M.A. for 12 months and allowed P.M.A. to return home with the support of relevant services provided by MCCS. However, on June 14, 2021, MCCS received a new referral alleging that: Mother's home was in a deplorable condition; she was feeding moldy food to P.M.A.; there were concerns regarding Mother's mental health; and P.M.A. was not meeting developmental milestones. In October 2021, MCCS filed a motion for an extension of protective supervision and then for interim temporary custody, and P.M.A. was removed from Mother's home. On January 14, 2022, temporary custody was granted to MCCS.

{¶ 4} On September 26, 2022, MCCS filed a motion for permanent custody. A hearing on the motion was conducted by a magistrate in January 2023. Mother did not appear at the permanent custody hearing, and her attorney requested a continuance.

The magistrate denied the request. On March 2, 2023, a magistrate's decision and judge's order granted permanent custody of P.M.A. to MCCS. Mother objected to the decision on March 16, 2023, and supplemented her objections on May 8, 2023, arguing that the magistrate had erred in failing to grant the requested continuance. The trial court adopted the magistrate's decision on August 21, 2023. Mother filed a notice of appeal on September 21, 2023 (Montgomery C.A. No. 29922).

{¶ 5} MCCS filed a motion to dismiss Mother's appeal, arguing that it was untimely. On October 3, 2023, we ordered Mother to show cause why the appeal should not be dismissed for lack of a final order, noting that the trial court had failed to expressly rule on Mother's objections to the magistrate's decision. On October 4, 2023, the trial court issued an amended final order, adding language expressly overruling Mother's objections. Mother again appealed. On October 17, 2023, Mother filed a response to MCCS's motion to dismiss, a request for a delayed appeal, and a response to our show cause order. In response, MCCS asked us to deny the request for a delayed appeal and to dismiss the appeal.

{¶ 6} On November 2, 2023, we issued a Decision and Final Judgment Entry dismissing Mother's first appeal on the bases that the show cause order had not been satisfied and the trial court's August 21, 2023 order had not been final and appealable because it did not expressly rule on Mother's objections. We noted that the trial court's October 4 amended order purporting to overrule Mother's objections was a nullity because the trial court had entered it while an appeal was pending.

{¶ 7} On November 8, 2023, MCCS filed a motion to dismiss Mother's second

appeal, arguing that because the October 4, 2023 order was a nullity, it was not a final order. After issuing a show cause order to which Mother did not respond, we dismissed Mother's second appeal for lack of jurisdiction in November 2023 (Montgomery C.A. No. 29960).

{¶ 8} On December 7, 2023, the trial court filed a second amended final judgment, and Mother filed the instant appeal on December 28, 2023.

**Assignment of Error and Analysis**

{¶ 9} Mother raises the following assignment of error:

THE TRIAL COURT ERRORED [SIC] IN DENYING MOTHER'S ATTORNEY'S MOTION FOR A CONTINUANCE OF THE TRIAL.

{¶ 10} Mother challenges the trial court's denial of her attorney's oral motion for a continuance when she failed to appear at the permanent custody hearing in January 2023.

{¶ 11} In denying the continuance, the magistrate found that the parties had been properly served and that it was in the best interest of the child to proceed with the hearing. At the hearing, Jill Bradley, an MCCS caseworker, provided the only testimony regarding MCCS's history with P.M.A. She indicated that MCCS had provided case management services, counseling, and intervention services to Mother and P.M.A. Bradley testified that Mother's mental health concerns were ongoing, and she described the deplorable living conditions at Mother's home, including excessive clutter that posed hazards to P.M.A.'s safety and the presence of moldy food in the home. According to Bradley, if MCCS's motion for permanent custody were granted, the agency's permanency plan for

P.M.A. was adoption.

{¶ 12} When it overruled Mother's objection to the magistrate's denial of a continuance, the juvenile court noted that Mother's failure to appear had been unexpected and that she had not contacted the court or her attorney to provide an explanation for her absence. The court also observed that Mother's attorney did not specify the length of time that would be needed to ensure Mother's presence at a future hearing. Although there had been no previous continuances, the court noted that that factor alone was not determinative of whether to grant or deny a continuance. The court recognized Mother's right to raise her child, but it also found it significant that a continuance would delay the permanent custody determination, and therefore permanency for the child, which was not in the child's best interest.

{¶ 13} Mother asserts that no other continuances had been requested "during the life of the case" and any inconvenience to MCCS or its caseworker Bradley would have been minimal. She contends that the custody matter "did not need to be heard in any expedited manner" and that her "rights were terminated" without affording her an opportunity to present her own exhibits, witnesses, or testimony as to her case plan progress. According to Mother, she had visited the child consistently and met with the MCCS caseworker regularly, and her due process rights were violated by the denial of the continuance.

{¶ 14} Pursuant to Juv.R. 40(D)(4)(d), if timely objections to a magistrate's decision are filed, the juvenile court must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual

issues and appropriately applied the law." A trial court's decision to adopt a magistrate's decision is subject to an abuse of discretion standard of review. *In re S.E.*, 8th Dist. Cuyahoga No. 96031, 2011-Ohio-2042, ¶ 13.

{¶ 15} Generally speaking, the "fundamental requisites of due process of law in any proceeding are notice and the opportunity to be heard." (Citations omitted.) *In re A.T.V.,* 2d Dist. Champaign No. 2013-CA-59, 2015-Ohio-4782, ¶ 12, citing *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 17. "Ohio has long recognized that a parent's right 'to the care and custody of his [or her] children is one of the most precious and fundamental' in the law and that the permanent termination of parental rights is 'the family law equivalent of the death penalty in a criminal case.' " *In re Z.G.A.*, 2d Dist. Greene No. 2015-CA-51, 2016-Ohio-238, ¶ 19. "Because the termination of parental rights is a serious matter, where a parent communicates with the court or counsel to explain a problem attending a hearing, the courts have required 'great care be taken to ensure that due process is afforded parents in parental termination proceedings.' " *In re A.W.,* 8th Dist. Cuyahoga No. 109239, 2020-Ohio-3373, ¶ 29, quoting *In the Matter of Rachal,* 6th Dist. Lucas No. L-02-1306, 2003-Ohio-1041, ¶ 12. "However, 'a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding.' " (Citation omitted.) *Id.* In permanent custody cases, courts must also be mindful of the best interest of the children and their need for stability and permanency in considering a request for a continuance. *In re C.B.,* 2023-Ohio-1578, 214 N.E.3d 673, ¶ 24 (8th Dist.)*,* quoting *In re I.N.,* 8th Dist. Cuyahoga No.

110067, 2021-Ohio-1406, ¶ 16.

{¶ 16} "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). We have held that the factors set forth in *State v. Unger,* 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), are applicable to a trial court's denial of a continuance where a parent fails to appear for a permanent-custody hearing. *In re D.K.,* 2d Dist. Greene No. 2014-CA-37, 2015-Ohio-546, citing *Unger. Unger* states:

> In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

(Citations omitted.) *Unger* at 67-68. A court is not "required to give particular weight to any one of these factors." *In re C.B.* at ¶ 24*,* citing *In re K.H.*, 8th Dist. Cuyahoga No. 111287, 2022-Ohio-2588, ¶ 69.

{¶ 17} Mother's counsel requested the continuance at the start of the permanent custody hearing in Mother's absence. There was no foundation from which to conclude whether the purpose for the continuance was legitimate or contrived. There was no suggestion in the record that Mother had communicated or attempted to communicate

with counsel or the court regarding her failure to appear at the hearing, and there was no discussion about how long a continuance would need to be. A continuance would have inconvenienced the court, opposing counsel, and MCCS due to the necessity of rescheduling the hearing. Although the record does not reflect that other continuances had been requested and received, that factor alone was not determinative. Mother created the need for the last-minute continuance by failing to exhibit cooperation and communication regarding her absence from the hearing. We agree with MCCS that, in light of the serious nature of the hearing and the facts that Mother had been properly served and MCCS and the court were ready to proceed, it was not an abuse of discretion for the court to deny a continuance due to Mother's completely unexplained absence. P.M.A. had an ongoing need for permanency and stability, which the trial court expressly considered.

{¶ 18} Mother's assignment of error is overruled.

{¶ 19} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.