[Cite as *In re N.C.*, 2023-Ohio-1942.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

IN THE MATTERS OF:

N.C., T.C., T.C., I.C., M.C.,

ALLEGED DEPENDENT CHILDREN.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0047**

---

Juvenile Appeal from the
Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio
Case Nos. 2018 JC 01067, 2018 JC 01068, 2018 JC 01069,
2018 JC 01070, 2019 JC 00230

**BEFORE:**
David A. D'Apolito, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Rhonda G. Santha,* 6401 State Route 534, West Farmington, Ohio 44491, for
Appellant and

*Atty. Kristie M. Weibling,* Mahoning County Children Services, 222 West Federal Street,
4th Floor, Youngstown, Ohio 44503, for Appellee (No Brief Filed).

Dated: June 12, 2023

**D'Apolito, P.J.**

**{¶1}** Appellant, B.C. ("Mother"), appeals from the March 30, 2023 judgment of the Mahoning County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of two of her minor children, N.C. (d.o.b. 7/2/2014) and M.C. (d.o.b. 2/20/2019) (together "minor children"), to Appellee, Mahoning County Children Services ("Agency"), following a hearing.[1]  On appeal, Mother asserts the juvenile court erred in granting permanent custody of the minor children to Agency. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** On September 6, 2018, Agency filed a complaint for temporary legal custody alleging that N.C. was dependent under R.C. 2151.04(C).  On February 25, 2019, Agency filed a complaint for temporary legal custody alleging that M.C. was dependent under R.C. 2151.04(C).  The juvenile court appointed a guardian ad litem ("GAL") for the minor children and appointed counsel and a GAL for Mother.

**{¶3}** Shelter care hearings were held.  The safety of the minor children was an issue due to extensive domestic violence in the household, unsafe home conditions (mold, broken windows, no utilities), and Mother's mental health.  At the time of M.C.'s birth, Mother tested positive for marijuana.

**{¶4}** Adjudication and disposition hearings were held.  The juvenile court found the minor children to be dependent and granted temporary custody to Agency.  Agency filed case plans and the GAL filed reports.

**{¶5}** Ultimately, on February 15, 2022, Agency filed a motion for permanent custody.  The final report of the minor children's GAL recommended that permanent custody, with power of adoption, be granted to Agency.

---

[1] N.C.'s father is P.H.  P.H. completed a voluntary surrender of permanent custody of N.C. effective July 11, 2022. M.C.'s father is D.W.  D.W. is deceased.  Mother's three other children listed in the caption, T.C. (d.o.b. 9/9/2015), T.C. (d.o.b. 8/12/2016), and I.C. (d.o.b. 12/21/2017), are not subject to this appeal.  T.C., T.C., and I.C.'s father is T.H.  The juvenile court granted legal custody of T.C., T.C., and I.C. to T.H. effective July 29, 2022.

**{¶6}** The juvenile court held a final hearing on August 1, 2022. The following were present at that hearing: Attorney Kristie Weibling, Agency's counsel; Miranda Boyle, an Agency caseworker (did not testify); Jill Solis, an Agency caseworker ("Caseworker Solis"); Ryan Nagy, M.D., Mother's treating physician at Generations Behavioral Health ("Dr. Nagy"); Attorney Daniel Solmen, the minor children's GAL ("GAL Solmen"); Mother; Attorney Ross Douglass, Mother's counsel; Attorney Robert Price, Mother's GAL ("GAL Price"); and Jason and Megan Lewis, foster parents/prospective adoptive placements (did not testify).

**{¶7}** Dr. Nagy provides medical care services for Generations Behavioral Health and psychiatric services through its Anchor Recovery team. (8/1/2022 Hearing Tr., p. 40). Dr. Nagy treated Mother and prepared her medical record. (*Id.* at p. 41); (Exhibit 1). Mother was admitted to Generations Behavioral Health on January 4, 2022 and was discharged on January 9, 2022. (*Id.* at p. 42, 44). She was brought in by police after exhibiting psychotic symptoms. (*Id.* at p. 42).

**{¶8}** Dr. Nagy diagnosed Mother as having "symptoms consistent with bipolar disorder, Type I, severe, with manic features." (*Id.* at p. 43). Mother tested positive for marijuana and also exhibited "some dilutions [sic] at the time in regards to religious and supernatural preoccupations." (*Id.* at p. 43-44). Mother had "racing thoughts" and believed she was "a prophet." (*Id.* at p. 44). It was reported that Mother had an episode and jumped out of a moving vehicle. (*Id.* at p. 46). Medication, specifically Abilify, an atypical antipsychotic drug, seemed to improve Mother's concerning behaviors. (*Id.* at p. 44-45). With regard to her treatment plan, it was recommended that Mother follow up with her outpatient treatment services and continue taking Abilify. (*Id.* at p. 45).

**{¶9}** Caseworker Solis was assigned as the caseworker for the minor children and their siblings in September 2021. (*Id.* at p. 58). The four oldest children were adjudicated dependent on November 15, 2018. (*Id.* at p. 58-59). Agency received temporary custody of M.C. on February 25, 2019. (*Id.* at p. 59). M.C. was adjudicated dependent on April 23, 2019. (*Id.*) The children remained in the uninterrupted temporary custody of Agency until September 29, 2020. (*Id.* at p. 60). At that time, they were returned to the temporary custody of Mother with protective supervision. (*Id.*) Since there

was a resolution relative to T.C., T.C., and I.C., the focus at the hearing only remained on the minor children, N.C. and M.C. (*Id.* at p. 61).

{¶10} In an effort to reunite the minor children with Mother, a case plan was implemented. (*Id.*) The case plan goals included for Mother to maintain stable housing with working utilities; to re-engage with her mental health provider; to obtain a mental health assessment and comply with treatment recommendations; to submit to random drug tests; to complete a substance abuse assessment and comply with treatment recommendations; to demonstrate an understanding of the minor children's need for age-appropriate supervision and discipline; and to resolve all pending criminal matters. (*Id.* at p. 61-62).

{¶11} On February 2, 2021 and February 23, 2021, Mother left her children alone without proper adult supervision which necessitated them coming back into the temporary custody of Agency. (*Id.* at p. 62-63). Nine criminal child endangering charges resulted from these two incidents. (*Id.* at p. 63). The minor children were included as victims in those cases. (*Id.* at p. 91). Mother entered guilty pleas to all nine charges and is on probation with Warren Municipal Court. (*Id.* at p. 63). Agency obtained temporary custody of the children on February 24, 2021 for the second time. (*Id.* at p. 64). Since February 24, 2021, the minor children have remained in the uninterrupted temporary custody of Agency. (*Id.*)

{¶12} In mid-December 2021, Mother lost her housing and had 30 days to vacate. (*Id.* at p. 65). It was reported thereafter that Mother was staying at the Rescue Mission but she never provided any documentation. (*Id.* at p. 66). Mother also never provided any copies of any lease agreement or any bills to establish she had housing. (*Id.*)

{¶13} Caseworker Solis indicated Mother made threats to her via voicemail because Mother did not want T.C. admitted to Belmont Pines and did not want him medicated. (*Id.* at p. 69). As a result, Agency granted Caseworker Solis permission to complete visits at Agency. (*Id.* at p. 70). Mother's mental health treatment plans at Coleman Health Services are for "Ongoing individual therapy." (*Id.* at p. 71). Mother was not engaged in medication management at Coleman Health Services. (*Id.*) Although Mother had medication management appointments scheduled, she did not attend. (*Id.* at p. 72). At the time Mother was admitted to Generations Behavioral Health for concerns

Case No. 23 MA 0047

of delusions and religious ideations on January 4, 2022, she was treating at Coleman Health Services. (*Id.* at p. 74). Mother tested positive for marijuana and Oxycodone. (*Id.*) Mother never provided Caseworker Solis with a valid prescription for Oxycodone. (*Id.* at p. 75). To Caseworker Solis' knowledge, Mother has a medical marijuana card. (*Id.* at p. 76).

**{¶14}** Caseworker Solis referred Mother to Coleman Health Services for a substance abuse assessment. (*Id.* at p. 78). However, Mother did not obtain that assessment. (*Id.*) Apparently, Mother has more children as seven of her children would be present during visitations at Agency. (*Id.* at p. 81). Caseworker Solis observed Mother paying more attention and was much more interactive with child "L." (*Id.* at p. 80-81). The visits were "very chaotic." (*Id.* at p. 81). During a visit in April 2022, Mother's visitation actually became disruptive to other families that were visiting their children. (*Id.* at p. 82). Mother's behavior was "inappropriate," she used "vulgar language," and was "very loud." (*Id.*) Other families in visitation rooms at that time were "scared." (*Id.* at p. 82-83). Two deputies had to "de-escalate" Mother. (*Id.* at p. 83). Virtual visitations occurred thereafter as a result of Mother's behavior. (*Id.* at p. 83-84). N.C. refused to attend visitation because of how Mother treated her during visits. (*Id.* at p. 84).

**{¶15}** Unsuccessful attempts were made to place the children with numerous relatives in various states. (*Id.* at p. 86-87). The minor children were in separate foster homes. (*Id.* at p. 88). N.C. is doing "excellent" and has "bonded" to her foster family. (*Id.* at p. 88-89). M.C.'s foster mother put Caseworker Solis on notice asking that M.C. be removed due to his "behaviors." (*Id.* at p. 89). Agency requested that the juvenile court grant it permanent custody of the minor children, with the power of adoption, and find it made reasonable efforts in attempting to reunify the family. (*Id.* at p. 91-92).

**{¶16}** Mother testified she lives in Warren, Ohio and provided a rental lease. (*Id.* at p. 110); (Exhibit A). The residence is a three bedroom house and Mother said she has made preparations for her children to live with her there. (*Id.* at p. 111). Mother stated she is currently in counseling at Coleman Health Services. (*Id.* at p. 112). Mother provided a report from her counselor. (*Id.* at p. 113); (Exhibit B). Mother indicated she obtained a marijuana card in June 2021. (*Id.* at p. 114). Mother said she had a prescription for Oxycodone and claimed she is not addicted. (*Id.* at p. 115).

**{¶17}** Mother has been working at Always Best Healthcare as a home health aide since March 2022. (*Id.* at p. 115-116). Mother indicated her criminal cases have been resolved. (*Id.* at p. 117). Mother said a pending criminal charge regarding an eviction due to a gun charge was dismissed. (*Id.*) Mother is on non-reporting probation in Mahoning and Trumbull counties. (*Id.* at p. 117-118). Mother said she has never violated her probation. (*Id.* at p. 119). Mother is not in favor of Agency's motion for permanent custody of her children. (*Id.*)

**{¶18}** GAL Solmen, the minor children's GAL, testified that "despite [Mother's] issues, she does show love for her children and she does demonstrate a bond with them, albeit not the most healthy one." (*Id.* at p. 121). GAL Solmen indicated, however, that "due to [Mother's] mental health issues and her inability to address them, she's created a dangerous environment for her children on more than one occasion. In addition, [Mother] has failed to address her case plan goal as set forth by [Agency]." (*Id.*) GAL Solmen said, "while [Mother] has regularly visited her children, she has not taken any steps toward a realistic safe reunification with them, choosing instead to blame the system." (*Id.* at p. 122). "[Mother's] behaviors have been extreme enough to warrant the limitation of her visits to zoom meetings at [Agency]." (*Id.*) GAL Solmen concluded, "And based upon that I do make a recommendation that permanent custody of [the minor children] be granted to [Agency]." (*Id.*)

**{¶19}** GAL Price, Mother's GAL, testified that he had met with Mother and discussed her history of mental illness, her need to take her medication, her relationship with various Agency personnel, her case plan, and her adherence. (*Id.* at p. 135). GAL Price would like to see Mother, currently pregnant with another child, have the opportunity to continue to work on her case plan. (*Id.* at p. 136). They did not discuss any plans for her unborn child. (*Id.*)

**{¶20}** On March 30, 2023, the juvenile court terminated Mother's parental rights and granted permanent custody of the minor children to Agency following the hearing. In its judgment, the court stated the following:

> After a careful review of the file, transcript, and case law, the Court finds as follows:

\* \* \*

The Court finds the Magistrate properly found clear and convincing evidence that pursuant to Ohio Revised Code 2151.414(B)(1)(d), Minor Children, [N.C. and M.C.], have been in the Temporary Custody of the Agency for twelve (12) or more of the past twenty-two (22) consecutive months. \* \* \*

The Magistrate considered all of the factors in Ohio Revised Code 2151.414(D)(1). As the trier of fact, the Magistrate found [Caseworker] Jill Solis was credible and compelling, in all respects. According to the uncontroverted testimony of the caseworker, Minor Children, [N.C. and M.C.], have been in several placements during the periods that the Agency had Temporary Custody. Ohio Revised Code 2151.414(D)(1)(a). She observed that these Minor Children struggled with visitation with Mother. *Id.* Mother paid more attention to her oldest daughter, and another young child who joined the visits with these Minor Children, and siblings, [T.C., T.C., and I.C.]. *Id.* Additionally, Mother had to be removed from visits at the Agency because of inappropriate outbursts, and her visitation was converted to Zoom. *Id.* These Minor Children have resisted visitation with Mother. Minor Child, [M.C.], is too young to express a custody preference. Ohio Revised Code 2151.414(D)(1)(b). Minor Child, [N.C.], does not even want to have visitation with Mother, according to the compelling testimony of the caseworker. *Id.* The caseworker testified that Minor Child, [N.C.], is very bonded to her current foster family. *Id.* Minor Child, [N.C.], came into the Agency's Temporary Custody on November 18, 2018. Ohio Revised Code 2151.414(D)(1)(c). Minor Child, [M.C.], came into the Agency's Temporary Custody on February 25, 2019. *Id.* Both Minor Children were returned to Mother on September 29, 2020. *Id.* These Minor Children then came back into care on February 23, 2021. *Id.* Both Minor Children have [been] disrupted from several placements due to behavioral problems. *Id.* The Court finds that Minor Children, [N.C. and M.C.], have a need for a

legally secure placement due to their custodial history, and the trauma they have incurred. Ohio Revised Code 2151.414(D)(1)(d). The Court further finds that * * * a placement which provides permanency and stability cannot be achieved without a grant of Permanent Custody to the Agency. *Id.* Finally, the Court finds that Ohio Revised Code 2151.414(D)(1)(e), does not apply to Mother. [P.H.], Father of Minor Child, [N.C.], completed a Voluntary Surrender of Permanent Custody during Trial on July 11, 2022. [D.W.], Father of Minor Child, [M.C.], is deceased. In making this Decision, the Court further considered all of the factors in Ohio Revised Code 2151.414(E).

The trial court found that Ohio Revised Code 2151.414(E)(1), applied to Mother. Following the placement of Minor Children, [N.C. and M.C.], outside these Minor Children's home, and notwithstanding reasonable case planning and diligent efforts by the Agency to assist the Mother with remedying the problems that caused these Minor Children's removal from Mother's home, Mother had failed continuously and repeatedly to substantially remedy the conditions causing these Minor Children to be removed. Mother had not successfully utilized psychiatric, psychological, and other social and rehabilitative services for mental health treatment, despite being made available to Mother for the purpose of changing her conduct, to allow her to resume, or to maintain parental duties. Specifically, Mother failed to successfully address her serious mental health issues, failed to follow treatment recommendations, such as weekly counseling, and failed to engage in medication management throughout the pendency of this proceeding. Also, Mother was evicted during the pendency of this proceeding, and never provided an address for her residence, until her averments during her testimony at Trial.

The evidence presented supports a finding that Ohio Revised Code 2151.414(E)(2), applies to Mother. The chronic emotional illness of Mother was so severe that it made Mother unable to provide an adequate

permanent home for Minor Children, [N.C. and M.C.], at the present time, and, as anticipated, within the foreseeable future. Mother has severe mental health issues which she has failed to address by the time of [the] Permanent Custody Trial. *Id.* Mother was involuntarily committed in January, 2022, and continued to fail or refuse to follow mental health and medication management treatment recommendations thereafter.

The evidence further supports that Ohio Revised Code 2151.414(E)(16), applied to Mother. Mother was convicted of nine (9) counts of Child Endangering concerning these Minor Children, and three (3) of their siblings. The Court noted that this involved two (2) separate incidents of Child Endangering, that occurred only twenty (20) days apart in February, 2021. The first incident on February 2, 2022, involved Minor Child, [N.C.], and her siblings, [T.C., T.C., and I.C.]. Mother was charged with four (4) counts of Child Endangering, due to leaving these Minor Children home alone, unsupervised. On February 23, 2021, Mother was charged with five (5) counts of Child Endangering, due to leaving all five (5) Minor Children home alone, unsupervised, including Minor Child, [M.C.], DOB: February 20, 2019. This demonstrated to the Court Mother's inability to protect the Minor Children due to her severe mental health issues. The Court also found the testimony of Attorney Daniel Solmen, Guardian Ad Litem, and Jill Solis, caseworker, compelling regarding these incidents. * * *

The Court found that the Agency has made reasonable and diligent efforts to assist the Parents with reunification with the Minor Children. * * * Based on the foregoing, this Court supports the granting of Permanent Custody to the Agency, with power of adoption, as it will serve the best interest of Minor Children, [N.C. and M.C.]. Counsel for Mother argues that Mother has met the requirements of the case plan as set forth by the Agency, however, Mother never advised the Agency of her home location until the Hearing which prevented the Agency from conducting a home investigation to determine if it complied with the law. Additionally, the Agency was unable

Case No. 23 MA 0047

to confirm that the lease presented at the Hearing was indeed her lease and suitable. Mother's Counsel further asserted that Mother has appropriate employment but supporting evidence or documentation of the employment was never presented. Finally, Counsel for Mother claimed Mother is attending her monthly counseling however the evidence was uncontroverted that Mother is not engaged in medication management. Her medical orders are for her to continue taking Abilify as prescribed but is not following with any medical doctor. Importantly, Mother did not show any evidence that supported her claim that she has the proper parenting skills and ability to meet the needs of the Minor Children. It is important to note, due to Mother's inappropriate parenting skills at visitation, the visits were converted to virtual visits so as not to endanger or harm the Minor Children. These significant issues were raised at the Hearing and remained uncontroverted by Mother. * * *

* * *

The Court finds that the Agency met its burden of proof by clear and convincing evidence, and that placement of Minor Children, [N.C.], DOB: July 2, 2014, and [M.C.], DOB: February 20, 2019, in Permanent Custody of the Agency, with power of adoption, will serve their best interest.

IT IS THEREFORE ORDERED, pursuant to Ohio Revised Code 2151.353, that Minor Children, [N.C.], DOB: July 2, 2014, and [M.C.], DOB: February 20, 2019, be permanently committed to [Agency] Mahoning County Children Services, Mahoning County, Ohio, with power of adoption, and that the best interest of Minor Children, [N.C. and M.C.], will be served by permanently terminating the parental rights of the Parents.

(3/30/2023 Judgment Entry, p. 9-12).

{¶21} Mother filed a timely appeal and raises a single assignment of error.[2]

---

[2] Mother filed an appellate brief on May 15, 2023. Agency did not file a brief.

Case No. 23 MA 0047

## ASSIGNMENT OF ERROR

**THE COURT'S PERMANENT CUSTODY ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND, AS A RESULT, FAILED TO BE CLEAR AND CONVINCING PROOF OF BEST INTERESTS AS AN EVIDENTIARY BURDEN.**

**{¶22}** In her sole assignment of error, Mother argues the juvenile court's permanent custody order was against the manifest weight of the evidence and, as a result, failed to amount to clear and convincing proof of best interests as an evidentiary burden. Mother asserts the court "substantiated conclusions mandatory for a permanent custody finding with faulty reasoning and information that was not current." (5/15/2023 Mother's Brief, p. 3). Mother believes "[t]his case becomes 'the "exceptional case in which the evidence weighs heavily against the (decision)".'" (*Id.* at p. 6).

> "(T)he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972). A parent's interest in the care, custody, and management of his or her child is "fundamental." *Id.*; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). The permanent termination of a parent's rights has been described as, "(* * *) the family law equivalent to the death penalty in a criminal case." *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

*In re W.W.*, 7th Dist. Columbiana No. 21 CO 0011, 2021-Ohio-3440, ¶ 26.

> "(A) court exercising Juvenile Court jurisdiction is invested with a very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment." *In re Anteau,* 67 Ohio App. 117, 119, 36 N.E.2d 47, 48 (1941). "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable (* * *)." *In re Jane Doe 1,* 57 Ohio

St.3d 135, 137, 566 N.E.2d 1181, 1184 (1990), citing *State v. Adams,* 62 Ohio St.2d 151, 157, 172-173, 404 N.E.2d 144, 148-149 (1980). A juvenile court's decision to terminate parental rights and transfer permanent custody of a minor child must be supported by clear and convincing evidence. *Santosky, supra,* paragraph three of the syllabus. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is (an) intermediate (standard), being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal.*" (Emphasis sic). *Cross v. Ledford,* 191 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

When reviewing the decision of a juvenile court to determine whether it is supported by clear and convincing evidence, "a reviewing court may not as a matter of law substitute its judgment as to what facts are shown by the evidence for that of the trial court" because the "trial judge, having heard the witnesses testify, was in a far better position to evaluate their testimony th(a)n a reviewing court." *Id.* at 478, 120 N.E.2d 118. "Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false." *Id.* "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

*In the Matter of K.J. and S.M.J.*, 7th Dist. Jefferson Nos. 21 JE 0022 and 21 JE 0023, 2021-Ohio-4299, ¶ 29, quoting *In re T.N.T.*, 7th Dist. Jefferson No. 12 JE 25, 2013-Ohio-861, ¶ 14-15.

{¶23} When a motion for permanent custody is filed by a children services agency, the juvenile court's decision whether to grant permanent custody to the agency is

Case No. 23 MA 0047

governed by R.C. 2151.414(B)(1), the first prong of the permanent custody test, which provides:

"[T]he court may grant permanent custody of a child to [the agency] if the court determines at the hearing * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child * * * cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period and * * * the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised

Code [to be an abused, neglected, or dependent child] or the date that is sixty days after the removal of the child from home.

R.C. 2151.414(B)(1)(a)-(e).

**{¶24}** In this case, the minor children could not be placed with any parent within a reasonable period of time. N.C.'s father, P.H., completed a voluntary surrender of permanent custody of his daughter. M.C.'s father, D.W., is deceased. Mother failed to comply with aspects of the case plan, including: failed to successfully address her serious mental health issues; failed to follow treatment recommendations, including weekly counseling; failed to engage in mental health and medication management treatment recommendations; failed to provide an address following her eviction; failed to present supporting evidence or documentation of appropriate employment; had to be removed from visits at Agency due to inappropriate outbursts; and was convicted of nine counts of criminal child endangering on two separate occasions involving the minor children and three of their siblings. The record reveals the minor children have been in the temporary custody of Agency for 12 or more of the past 22 consecutive months. *See* (3/30/2023 Judgment Entry, p. 9). N.C. came into Agency's temporary custody on November 18, 2018. M.C. came into Agency's temporary custody on February 25, 2019. The minor children were returned to Mother on September 29, 2020. The minor children returned into Agency's care on February 23, 2021. In the past 22 months, the minor children were in Agency's temporary custody in excess of 16 months. Thus, there is clear and convincing evidence to support the juvenile court's termination of Mother's parental rights and award of permanent custody to Agency under the first prong of the permanent custody test. R.C. 2151.414(B)(1)(d).

**{¶25}** In addition to the first prong, "[an] agency [also] bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest." *Matter of J.C.,* 7th Dist. Monroe No. 20 MO 0012, 2021-Ohio-1476, ¶ 6, citing *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26. R.C. 2151.414(D)(1) sets out a nonexhaustive list of factors the court must consider, and the court is encouraged but not required to address the factors relevant to the decision." *Matter of J.C.* at ¶ 6. R.C. 2151.414(D)(1) provides:

Case No. 23 MA 0047

In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

**{¶26}** In determining the best interest of the minor children being placed into the permanent custody of Agency, the juvenile court considered and referenced numerous factors in its March 30, 2023 judgment, including:

A custody order is in the best interest of the Minor Children. Reasonable efforts were made to prevent the need for placement and/or to make it possible for the Minor Children to return home and/or to finalize the permanency that is in effect. The Agency has made reasonable and diligent efforts to achieve reunification with a Parent, after the Minor Children were removed from Mother due to dangerous situations. The Agency has provided extensive case management services to Mother for mental health assessment and treatment, stable housing, and parenting. Mother failed to maintain mental health services, as recommended, and did not successfully apply what she learned through parenting instruction. Mother was evicted

during the pendency of this proceeding, and if she located housing, never provided verification to the Agency of same. The Agency facilitated supervised visitation between Mother and the Minor Children. Due to Mother's inappropriate conduct during visitation, Mother's visitation was converted to Zoom. This occurred after Mother was escorted out of the Agency's building, due to an inappropriate outburst during visitation.

(3/30/2023 Judgment Entry, p. 8).

{¶27} Turning now to determining whether a child can be placed with either parent within a reasonable period of time, or whether a child should be placed with either parent pursuant to R.C. 2151.414(E), a court "shall consider all relevant evidence" and determine "by clear and convincing evidence" that "one or more of the following exist as to each of the child's parents:"

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *

> (2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing [on the motion for permanent custody];

> * * *

> (16) Any other factor the court considers relevant.

R.C. 2151.414(E)(1)-(2) and (16).

{¶28} In granting permanent custody of the minor children to Agency, the juvenile court specifically found, as stated, in its March 30, 2023 judgment:

The trial court found that Ohio Revised Code 2151.414(E)(1), applied to Mother. Following the placement of Minor Children, [N.C. and M.C.], outside these Minor Children's home, and notwithstanding reasonable case planning and diligent efforts by the Agency to assist the Mother with remedying the problems that caused these Minor Children's removal from Mother's home, Mother had failed continuously and repeatedly to substantially remedy the conditions causing these Minor Children to be removed. Mother had not successfully utilized psychiatric, psychological, and other social and rehabilitative services for mental health treatment, despite being made available to Mother for the purpose of changing her conduct, to allow her to resume, or to maintain parental duties. Specifically, Mother failed to successfully address her serious mental health issues, failed to follow treatment recommendations, such as weekly counseling, and failed to engage in medication management throughout the pendency of this proceeding. Also, Mother was evicted during the pendency of this proceeding, and never provided an address for her residence, until her averments during her testimony at Trial.

The evidence presented supports a finding that Ohio Revised Code 2151.414(E)(2), applies to Mother. The chronic emotional illness of Mother was so severe that it made Mother unable to provide an adequate permanent home for Minor Children, [N.C. and M.C.], at the present time, and, as anticipated, within the foreseeable future. Mother has severe mental health issues which she has failed to address by the time of [the] Permanent Custody Trial. *Id.* Mother was involuntarily committed in January, 2022, and continued to fail or refuse to follow mental health and medication management treatment recommendations thereafter.

Case No. 23 MA 0047

The evidence further supports that Ohio Revised Code 2151.414(E)(16), applied to Mother. Mother was convicted of nine (9) counts of Child Endangering concerning these Minor Children, and three (3) of their siblings. The Court noted that this involved two (2) separate incidents of Child Endangering, that occurred only twenty (20) days apart in February, 2021. The first incident on February 2, 2022, involved Minor Child, [N.C.], and her siblings, [T.C., T.C., and I.C.]. Mother was charged with four (4) counts of Child Endangering, due to leaving these Minor Children home alone, unsupervised. On February 23, 2021, Mother was charged with five (5) counts of Child Endangering, due to leaving all five (5) Minor Children home alone, unsupervised, including Minor Child, [M.C.], DOB: February 20, 2019. This demonstrated to the Court Mother's inability to protect the Minor Children due to her severe mental health issues. The Court also found the testimony of Attorney Daniel Solmen, Guardian Ad Litem, and Jill Solis, caseworker, compelling regarding these incidents. * * *

(3/30/2023 Judgment Entry, p. 10-11).

{¶29} The record reveals the juvenile court complied with the procedure prescribed by R.C. 2151.414. The court did not err in finding that it was in the minor children's best interest to terminate Mother's parental rights and grant permanent custody to Agency. Mother fails to establish that the court incorrectly found that the minor children could not or should not be placed with her within a reasonable period of time.

{¶30} Based on the facts presented, the juvenile court's decision does not go against the manifest weight of the evidence. The court had more than adequate facts and sufficient testimony, as delineated above and in the judgment granting permanent custody of the minor children to Agency, to proceed with a determination that the minor children remained dependent as previously adjudicated. Clear and convincing evidence existed that the minor children shall be placed into the permanent custody of Agency as the same was in the best interest of the minor children. Thus, because the juvenile court's judgment is supported by some competent, credible evidence going to all the essential elements of the case, it will not be reversed by this court as being against the manifest

weight of the evidence.  The minor children deserve safety and stability at this time which can only be accomplished through permanent custody to Agency.

{¶31}  Accordingly, the juvenile court did not err in finding that it was in the minor children's best interest to terminate Mother's parental rights and grant permanent custody to Agency.

## CONCLUSION

{¶32}  For the foregoing reasons, Mother's sole assignment of error is not well-taken.  The March 30, 2023 judgment of the Mahoning County Court of Common Pleas, Juvenile Division, terminating Mother's parental rights and granting permanent custody of the minor children to Agency following a hearing is affirmed.

Robb, J., concurs.

Hanni, J., concurs.

Case No. 23 MA 0047

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**