[Cite as *In re A.J.*, 2024-Ohio-3291.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   |                           |
|--------------------------|---|---------------------------|
| IN RE: A.J., R.J., Jr. & D.J. | : | JUDGES: |
|                          | : | Hon. W. Scott Gwin, P.J. |
|                          | : | Hon. William B. Hoffman, J. |
|                          | : | Hon. Andrew J. King, J. |
|                          | : | |
|                          | : | |
|                          | : | |
|                          | : | Case No.    CT2024-0063 |
|                          | : |             CT2024-0064 |
|                          | : |             CT2024-0065 |
|                          | : | OPINION |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County Court
                              of Common Pleas, Juvenile Division, Case
                              Nos. 22130076, 22130077, & 22130078

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       August 28, 2024

APPEARANCES:

For Mother                    For MCACPS
RICHARD D. HIXSON             MUSKINGUM COUNTY PROSECUTOR
3808 James Court, Suite 2     27 North Fifth Street
Zanesville, OH 43701          Zanesville, OH 43701

For Father                    Guardian Ad Litem
ADAM JOHNSON                  SARAH WOLSKE
5599 Levi Kramer Boulevard    505 Mt. Vernon Road, Suite 300
Canal Winchester, OH43110     Newark, OH 43055

*Gwin, P.J.*

{¶1}    Appellant-mother K. J. ["Mother"] appeals the April 1, 2024 Judgment Entry of the Muskingum County Court of Common Pleas, Juvenile Division that terminated her parental rights with respect to her minor children, A.J.[1], R.J. Jr. [2], and D.J.[3] and granted permanent custody of the children to appellee, Muskingum County Adult and Child Protective Services (hereinafter "MCACPS"). Appellee MCACPS did not file a brief in this appeal.

*Facts and Procedural History*

{¶2}    K.J. is the natural mother of A.J. (b. 05-30-2012), R.J. Jr. (b. 02-12-2015), and D.J. (b. 01-01-2019). On or about April 27, 2021, a complaint filed by MCACPS alleged neglect under R.C. 2151.03(A)(2) and dependency under R.C. 2151.04(C). Accompanying the complaint was a Motion for Ex-Parte Orders, filed by MCACPS, requesting emergency removal of the children from parents' custody. The motion was granted and the matter was scheduled for an ex- parte hearing on the following day.

{¶3}    An ex-parte hearing was held on April 28, 2021, at which only Mother appeared. The children were placed in the temporary custody of the agency at that time. A case plan was approved and adopted by the trial court indicating mental health, substance abuse, housing, income, and parenting objectives.

{¶4}    On or about July 21, 2021, MCACPS filed an updated Comprehensive Assessment and Case Plan in which both Mother and Father[4] of the children were identified as having significant mental health, substance abuse, housing, income and

---

[1] 5th Dist. No. CT2024-0063 / Muskingum # 22130076
[2] 5th Dist. No. CT2024-0064 / Muskingum # 22130077
[3] 5th Dist. No. CT2024-0065 / Muskingum # 22130078
[4] Father is not a party to this appeal

parenting issues, which significantly and adversely affected their ability to properly parent and protect their children and provide their children with a safe and sober home. No party objected to the case plan and the same was approved and adopted by the Court.

{¶5}    On July 22, 2021, the combined adjudicatory and dispositional hearing was held. Father did not appear and no counsel appeared on his behalf. Mother appeared with counsel. The trial judge found the children neglected and dependent as alleged in the complaint and temporary custody was continued with the agency.

{¶6}    Non-oral review hearings were conducted on April 26, 2022, October 25, 2022, and April 10, 2023.

{¶7}    On June 6, 2023, Mother filed a Motion for Unsupervised Visitation. This motion was heard on August 7, 2023 and was denied by the trial judge.

{¶8}    MCACPS filed a Motion for Permanent Custody on September 28, 2023. The motion was scheduled for hearing on January 16, 2024, but was continued to March 12, 2024 to allow Father to be appointed counsel. The motion was heard on that date.

*The permanent custody hearing*

{¶9}    The ongoing caseworker for MCACPS, Mother, and Father testified during the hearing.

{¶10} Brianna Hickenbottom, the ongoing caseworker testified the original complaint in this case was filed on April 27, 2021. T. at 6.[5] Hickenbottom further testified that MCACPS has had uninterrupted temporary custody of the three children since that date. Id. at 7. Accordingly, at the time the motion for permanent custody was filed on

---

[5] References are to the transcript of the Permanent Custody Hearing held March 12, 2024

September 28, 2023, the children had been in the custody of MCACPS for more than twelve months out of a twenty-two-month consecutive period. Id.

{¶11} Mother was asked to complete a mental health / drug assessment, have adequate housing and employment. T. at 8. Mother completed the assessment. Id. Mother completed intensive outpatient treatment in 2021. Id.; T. at 66. After a relapse, Mother successfully completed inpatient treatment at the Schultz Mansion through Cedar Ridge. T. at 8; 66. After this, Mother was recommended to complete intensive outpatient treatment once again, which she again completed successfully through Cedar Ridge. Id. at 66 – 67. She was also recommended to complete groups at Cedar Ridge, which she also successfully completed. Id. Ms. Hickenbottom testified that Mother has successfully completed her drug treatment. Id.

{¶12} Mother was prescribed Suboxone as part of her treatment. T. at 9. In Mother's drug screens the Suboxone would not always appear at the times that she should have been taking the drug. T. at 9. Hickenbottom randomly checked Mother's prescription pill bottle, along with the prescription pill bottle for the Xanax that Mother was prescribed. T. at 9-10. At times, the number of pills in the bottle would not be the correct number based upon Mother's prescribed dosage. Id. at 10. Mother would tell Hickenbottom that she either lost the pills or flushed them down the toilet. Id. Mother completed drug screening through the Cedar Ridge program. Id. at 68. Mother did not complete the drug screening through MCACPS. Id. at 68-69. Mother missed ten drug screenings before she stopped appearing for drug screens in January 2024. Id. at 11; 68. It is the policy of MCACPS to consider missed drug screens as a positive drug screen. T. at 71; 75.

{¶13} Hickenbottom testified that Mother was evicted from public housing in December 2023 for non-payment of rent. T. at 13. At the time, Mother was living with a paramour, C.F. Id. C.F. was asked to complete a drug and alcohol assessment and a mental health assessment by MCACPS; however, Hickenbottom testified that he did not want to do that. Id. at 14; 16; 48-49. Mother still resides with C.F. in a one-bedroom apartment. Id. at 15.

{¶14} Mother does not have a driver's license or a vehicle, and therefore must rely on public transportation. T. at 17. Mother is not employed and has no source of income. Id.

{¶15} Mother visits the children on a weekly basis. T. at 20. The children are placed in separate foster homes. A.J. is doing well in foster placement. T. at 31. R.J., Jr. is in a treatment foster home due to severe behavioral problems. Id. at 33. He does not use the bathroom, throws, and, hits things. Id. He receives treatment and medications through Nationwide Children's Hospital. Id. at 35. D.J. is currently in his third foster placement. T. at 35. He is in counseling and on medication. Id. at 36. D.J. would throw things at Mother and his siblings during visits. Id. at 37. All three children have behavioral problems that will need to be closely monitored in the future. T. at 37.

{¶16} Relative placement with up to ten individuals was explored by MCACPS. T. at 38. The individuals either did not respond when contacted or did not pass the home studies. Id. at 38-39. No appropriate relative placement has been found by MCACPS. Id. at 39.

{¶17} Mother testified that she completed in patient treatment at Cedar Ridge and intensive outpatient treatment through MBH in 2021. T. at 77. She then relapsed and

completed in patient treatment through Schultz and intensive outpatient treatment through Cedar Ridge after her completion of the inpatient program. Id. at 77.

**{¶18}** Mother testified that she has difficulty with transportation and has had difficulty reaching MCACPS to notify them. T. at 77. Mother calls each morning at 4:30 a.m. Id. at 78. Mother further testified that she is in school full time for the culinary arts. T. at 79. She attends classes three days a week. Id. at 90. Her estimated graduation date is 2027. Id. at 80.

**{¶19}** Mother testified that C.F. did not indicate that he does not want to participate in the case plan. T. at 82. Rather, he stated he was not going to try to take custody of the children away from Mother. Id.

**{¶20}** Mother testified that she graduated from parenting classes. Id. at 84.

**{¶21}** By Judgment Entry filed April 1, 2024, the trial judge issued his findings of fact granting permanent custody of the children to MCACPS. Specifically, the trial judge found that,

> The children cannot be placed with either parent within a reasonable time and should not be placed with either parent; (R.C. 2151.414(B)(1)(a); based on the findings enumerated in R.C. 2151.414(E)(1) and (2)).
>
> The children have been in the temporary custody of the agency for more than twelve (12) consecutive months of a twenty-two (22) month period of time.
>
> Further, the trial judge found that granting permanent custody to MCACPS was in the best interests of the children.

*Assignment of Error*

**{¶22}** Mother raises one Assignment of Error,

**{¶23}** "I. THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY AND TERMINATION OF APPELLANT'S PARENTAL RIGHTS WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

**{¶24}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157(1990), *quoting Stanley v. Illinois*, 405 U.S. 645 (1972). A parent's interest in the care, custody, and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith,* 77 Ohio App.3d 1, 16 (6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id. An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

**Standard of Review**

**{¶25}** The Ohio Supreme Court has recently delineated our standard of review as follows, "the proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties." *In re: Z.C.,* 2023-Ohio-4703, ¶18.

{¶26} Mother challenges both the sufficiency and the manifest weight of the evidence.

*Sufficiency of the Evidence*

{¶27} Whether the evidence is legally sufficient to sustain a verdict is a question of law. *In re: Z.C.,* 2023-Ohio-4703, ¶13. "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when 'the evidence is legally sufficient to support the jury verdict as a matter of law.'" *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3, *quoting Thompkins* at 386, 678 N.E.2d 541, *quoting Black's* at 1433." Id.

{¶28} The Ohio Supreme Court stated that where the degree of proof required to sustain an issue must be "clear and convincing," means "[t]he measures or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104 (1986); *Accord, In re: Z.C.,* 2023-Ohio-4703, ¶7. A court of appeals will examine the record to determine whether the trier of facts had sufficient evidence before it by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. 2023-Ohio-4703, ¶8; *In re Adkins,* 2006-Ohio-431, ¶17 (5th Dist.).

*Manifest weight of the evidence*

{¶29} The term "'manifest weight of the evidence'. . . relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶19. It "concerns 'the inclination of the greater

amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶30} Weight of the evidence addresses the evidence's effect of inducing belief. *Thompkins*, at 386-387; *State v. Williams,* 2003-Ohio-4396, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the decision is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42(1982) (quotation marks omitted); *State v. Wilson,* 2007-Ohio-2202, ¶25, citing *Thompkins.*

{¶31} In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Eastley,* 2012-Ohio-2179 at ¶ 21; *In re Z.C.,* 2023-Ohio-4703, ¶ 14. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

{¶32} When there is conflicting testimony presented at trial, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented. "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co.,*

*Inc* at fn. 3, *quoting* 5 Ohio Jur.3d, Appellate Review, §603, at 191-192 (1978); *In re Z.C.,* 2023-Ohio-4703, ¶14. In *Cross v. Ledford,* 161 Ohio St. 469, 477(1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶33}** The interplay between the presumption of correctness and the ability of an appellate court to reverse a verdict based on the manifest weight of the evidence has been stated as follows, "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Seasons Coal Co.,* 10 Ohio St.3d at 80, *quoting C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 280 - 281. *See, also*, *In re: Z.C.,* 2023-Ohio- 4703, ¶15; *Frankenmuth Mut. Ins. Co. v. Selz*, 6 Ohio St.3d 169, 172 (1983); *In re Sekulich,* 65 Ohio St.2d 13, 16 (1981).

**{¶34}** If a court of appeals determines that a judgment is against the manifest weight of the evidence, the proper remedy is a remand for a new trial. 2023-Ohio-4703, ¶16, citing *Eastley* at ¶ 22. However, "[r]eversal on the manifest weight of the evidence and remand for a new trial are not to be taken lightly." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 31; *In re: Z.C.,* 2023-Ohio- 4703, ¶16.

### Requirements for Permanent Custody Awards

**{¶35}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶36}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

>(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in

another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶37}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial judge must apply when ruling on a motion for permanent custody. In practice, the trial judge will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

### Temporary Custody for at least 12 out of a consecutive 22-month period- R.C. 2151.414(B)(1)(d).

**{¶38}** The "12 of 22" provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents

against the importance of a speedy resolution of the custody of a child. *In re C.W.,* 2004-Ohio-6411, ¶22. Through the "12 of 22" provisions in the permanent-custody statutes, the legislature provides parents with 12 months to work toward reunification before an agency can institute a permanent-custody action asserting R.C. 2151.414(B)(1)(d) grounds. Id.

{¶39} "Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period." *In re: C.W.,* 2004-Ohio-6411 at paragraph one of the syllabus. When calculating this time period, the Court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." 2004-Ohio-6411, ¶26.

{¶40} R.C. 2151.414(B)(1)(e) states that, "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

{¶41} In the case at bar, Mother concedes that the children had been in the temporary custody of the MCACPS for over twelve months of a consecutive 22-month period at the time the motion for permanent custody was filed.

{¶42} As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 2007-Ohio-5805 (5th Dist.); *In re: K.C.,* 2024-Ohio-2081, ¶45 (10th Dist.). This finding alone, in conjunction with a best interest finding, is

sufficient to support the grant of permanent custody. *In re Calhoun*, 2008-Ohio-5458 (5th Dist.) *In re: K.C.,* 2024-Ohio-2081, ¶45 (10th Dist.).

**{¶43}** Because Mother has not challenged the twelve of twenty-two-month finding as to the children, we would only need to address the best interest of the children pursuant to R.C. 2151.414(D). Id. However, the trial judge also found that R.C. 2151.414(B)(1)(a) was applicable. Even if we consider this argument, the trial judge did not err in determining the children cannot be placed with Mother at this time or within a reasonable time.

**Parental Placement within a Reasonable Time– R.C. 2151.414(B)(1)(a)**

**{¶44}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1) - (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95 (1996); *In re Hurlow*, 1997 WL 701328 (4th Dist. Sept. 21, 1998); *In re Butcher,* 1991 WL 62145 (4th Dist. Apr. 10, 1991).

**{¶45}** R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

…

(16) Any other factor the court considers relevant.

**{¶46}** As set forth above, the trial judge's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the children, and the testimony of the witnesses at trial. The trial judge was in the best position to determine the credibility of the witnesses.

**{¶47}** The judge found that MCACPS had made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for the children to return home safely to Mother's home. The record supports the judge's finding that Mother has not shown consistent sustained progress to have the children returned to her custody.

**{¶48}** It does not appear that Mother has been able to apply any behavioral changes that she has attempted to learn. Despite offering numerous services, Mother was unable or unwilling to mitigate the concerns that led to the children's removal. As set forth in our *Facts and Procedural History, supra*, we find there was sufficient and substantial competent evidence Mother failed to remedy the problems which initially caused the removal of the children from her home.

{¶49} In the case of *In re: Summerfield*, 2005-Ohio-5523 (5th Dist.), this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time. *Accord, In re: K.C.*, 2024-Ohio-2081, ¶56 (10th Dist.).

{¶50} The evidence demonstrated the very little successful efforts Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that Mother is not able to be a successful parent to the children.

{¶51} We find there is competent and credible evidence, which, if believed, would convince the average mind that the children cannot be placed with Mother within a reasonable time or should not be placed with Mother.

### The Best Interest of the Child

{¶52} An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26.

{¶53} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be

achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

**{¶54}** The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

**{¶55}** No one element is given greater weight or heightened significance. *In re C.F.,* 2007-Ohio-1104. R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* 2020-Ohio-5102, ¶33.

**{¶56}** A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 2000 WL 1700073 (5th Dist. Nov. 13, 2000), *citing in re Awkal,* 85 Ohio App.3d 309, 316 (8th Dist. 1994).

**{¶57}** In the case at bar, MCACPS investigated potential placement with relatives and found none suitable. Further, the evidence establishes that R.J., Jr. is presently in a

treatment foster home, and all of the children have behavioral issues. R.J., Jr.'s violent tendencies make it difficult for him to be placed with his siblings or be successfully returned to Mother. Considering the many obstacles in Mother's life, the trial judge found the children's need for a legally secure placement cannot be achieved without permanent custody. Nothing in the record before us demonstrates that more time or a return of custody to the Mother will in any way benefit the children. This case has been ongoing for over three years.

{¶58} In the present case, the trial judge concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to MCACPS. Upon review of the record, the record supports the trial judge's finding that granting the motion for permanent custody is in the children's best interest.

{¶59} In short, the juvenile judge's judgment entry demonstrates that the judge satisfied his statutory duty to consider the best interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

## Conclusion

{¶60} For these reasons, we find that the trial judge correctly found that the children had been in the temporary custody of MCACPS for over twelve months of a consecutive 22-month period.

{¶61} We further find the trial judge's determination that Mother had failed to remedy the issues that caused the initial removal, and, therefore, the children could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶62}  We further find that the trial court's decision that permanent custody to MCACPS was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶63}  Because the evidence in the record supports the trial judge's judgment, we overrule Appellant-Mother's assignment of error, and affirm the decision of the Muskingum County Court of Common Pleas, Juvenile Division.

By Gwin, P.J.,

Hoffman, J., and

King, J., concur